## CHRISTIAN T. GILBERT *v.* DIANE M. GILBERT
### (AC 22094)

Schaller, Flynn and Bishop, Js.

Argued June 11—officially released November 5, 2002

*Christian T. Gilbert,* pro se, the appellant (plaintiff).

*Jule A. Crawford,* for the appellee (defendant).

Opinion

SCHALLER, J. The plaintiff, Christian T. Gilbert, appeals from the judgment of the trial court dissolving his marriage to the defendant, Diane M. Gilbert. On appeal, the plaintiff claims that the court improperly (1) found him in violation of the automatic orders that enter with service of process in a dissolution action, (2) determined the amount of child support, (3) distributed marital assets and (4) accepted an appraisal of the marital home. We affirm the judgment of the trial court.

The following facts are relevant to our disposition of the plaintiff's appeal. After twelve years of marriage, the plaintiff filed for dissolution on November 17, 1999, on the ground of irretrievable breakdown. The marriage of the parties was dissolved on June 18, 2001. The parties had three minor children at the time of the dissolution. In its judgment, the court entered orders concerning child custody, incorporating by reference the parties' parenting plan. The court entered orders concerning, inter alia, child support, distribution of the marital assets, distribution of the plaintiff's stock options, health insurance and life insurance. The court ordered the plaintiff to pay to the defendant $4466 or approximately half of the amount he received from his sale of certain stock while the action was pending. Additional facts will be set forth as necessary for the resolution of the plaintiff's claims.

## I

The plaintiff first claims that the court improperly found him in violation of the automatic orders when he exercised certain stock options he had from his employer to pay attorney's fees. We decline to address that claim.

The following facts are necessary for the resolution of the plaintiff's claim. In October, 2000, the plaintiff exercised certain stock options that he had from his employer, United Health Group (UHG), netting approximately $8900. On December 14, 2000, the defendant filed a motion for contempt, arguing that the plaintiff had violated the automatic orders. The court denied the motion on January 2, 2001. At trial, the plaintiff testified concerning the transaction. During cross-examination by the defendant's attorney, the plaintiff stated that he sold the stock to pay his attorney's fees, believing that this was permitted by the automatic orders.[1] The plaintiff also testified that at the time he sold the stock, he had $600 remaining in his retainer with his attorney. He testified that at that time, his attorney had not asked for additional money for a retainer.

After the trial concluded, the defendant filed a motion requesting additional attorney's fees. In her memorandum of law in support of the motion, the defendant sought additional attorney's fees in the amount of $5000. The defendant offered four grounds for the award of the fees. The defendant argued that the money was necessary to protect the integrity of any financial

[1] Paragraph one of the automatic orders effective pursuant to Practice Book § 25-5 (a) (1) upon service of process provides: "Neither party shall sell, transfer, encumber (except for the filing of a lis pendens), conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except . . . for reasonable attorneys' fees in connection with this action."

awards the court makes or to prevent her from being deprived of her rights due to lack of funds. She argued that the plaintiff had violated the automatic orders in exercising the stock options. Finally, the defendant argued that her attorney's fees had increased because, inter alia, the plaintiff had refused to pay voluntary support and was unable to proceed to trial for three months, thereby forcing her to prepare for trial on three separate occasions. The plaintiff filed an objection to the request, arguing that the issues never were raised at trial.

In its memorandum of decision, the court found: "In August of 2000, during the pendency of this divorce action, the husband, in violation of the automatic orders in effect, sold stock options which netted him $8933.55." The court ordered the plaintiff to reimburse the defendant $4466, or half the money he received from the sale of the stock. The court did not explain the rationale it used to determine that the plaintiff had violated the orders, and the plaintiff did not file a motion for articulation.

"It is the appellant's responsibility to provide an adequate record for review. Practice Book § 60-5. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . . Practice Book § 61-10. Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did. . . . An appellant's utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . .

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed

by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *East Lyme* v. *New England National, LLC*, 69 Conn. App. 621, 625, 796 A.2d 1220 (2002).

Because the plaintiff failed to file a motion for articulation with respect the court's conclusion that he had violated the automatic orders, we have no record that would permit us to review the court's decision. Accordingly, the plaintiff has failed to establish through an adequate record that the court incorrectly applied the law or could not reasonably have concluded as it did. See id. We therefore decline to address his claim.[2]

---

[2] The plaintiff also argues that in ruling on the sale of the stock options, the court improperly revisited an issue that the court addressed previously. On December 14, 2000, the defendant filed a motion for contempt relating to the plaintiff's sale of the stock. On January 2, 2001, the court denied the motion. The plaintiff argues that by finding him in violation of the orders in the judgment, the court abused its discretion in addressing actions that the court earlier had found were not in violation of the orders. That argument is without merit.

In ruling on the motion for contempt, the court did not specifically rule that the plaintiff did not violate the automatic orders, and the previous ruling on the motion for contempt did not necessarily have any bearing on the court's later determination that he did violate the orders. A court must decline to hold a party in contempt if the facts are not "established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Internal quotation marks omitted.) *Bryant* v. *Bryant*, 228 Conn. 630, 637, 637 A.2d 1111 (1994). Also, a court may, in its sound discretion, "deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 718, 784 A.2d 890 (2001). Here, we need recognize only that we are not bound to conclude that the lack of a finding of contempt is dispositive of the merits of the challenge to the underlying conduct by the alleged contemnor.

The plaintiff also appears to challenge the court's order to reimburse the defendant by leveling a challenge to the motion for additional relief. He argues that the defendant's motion, which included a request for attorney's fees, allowed the court to address an issue that never was raised at trial. We note initially that the court heard testimony from the plaintiff on when

## II

The plaintiff next claims that the court improperly failed to order a downward deviation in child support as authorized by the child support guidelines (guidelines).[3] The plaintiff raises three distinct arguments to the court's award, which we address in turn.[4]

and why he exercised his stock options and, accordingly, we disagree with his contention that the issue was not addressed at trial. Moreover, the plaintiff did not challenge the defendant's motion for fees in his statement of the issues. We further conclude that his claim is inadequately briefed because he failed to comply with Practice Book § 67-4 (d) (4). That subdivision provides: "When error is claimed in any other ruling in a court or jury case, the brief or appendix shall include the pertinent motion or pleading as well as any other pertinent documents which are a part of the trial court case file but are not included in the record." The motion is not included in the court file. Further, the plaintiff failed to include in his brief or appendix the motion that he appears to challenge. Accordingly, we decline to address his claim.

[3] "General Statutes § 46b-215a created a commission charged with establishing criteria for the establishment of guidelines to ensure the appropriateness of child support awards. General Statutes § 46b-215b mandates that [t]he child support and arrearage guidelines . . . shall be considered in all determinations of child support amounts . . . within the state, subject to a rebuttable presumption that the amount so determined is the proper figure for a support award." (Internal quotation marks omitted.) *Carey* v. *Carey*, 29 Conn. App. 436, 439–40, 615 A.2d 516 (1992). Section 46b-215a-3 of the Regulations of Connecticut State Agencies describes the circumstances that may justify a support order different from, in other words, a deviation from, the presumptive support amounts calculated under the child support and arrearage guidelines.

[4] The plaintiff also argued that the court failed to "take into account the [health] insurance provided to the three minor children . . . at a cost of $36 per week." We decline to address that argument. Section 46b-215a-2a (c) (3) of the child support guidelines adds the cost of insurance premiums to the child support obligation obtained from the schedule, unless the parent providing such support is a "low-income obligor," in which case the cost of premiums is then deducted from the child support obligation. Here, the plaintiff has cited no part of the record supporting his position that the court improperly calculated his support obligation.

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal

The following facts and procedural history are necessary for the resolution of the plaintiff's claim. On November 6, 2000, the court, *Gordon, J.*, accepted the parenting plan submitted by the parties providing for the joint legal and physical custody of the parties' three minor children. The plan provided a specific schedule for custody, including vacations, holidays and transportation to and from extracurricular activities. The plan provided that the parties would attend therapy sessions to resolve parenting disputes that commonly arise with families that are no longer intact, with the cost for such therapy to be shared equally between the parties. In rendering the judgment of dissolution, the court made the following statement and orders concerning child support: "After reviewing all of the facts found, the testimonial and documentary evidence presented and admitted, the reasonable inferences therefrom drawn and the statutory criteria set in General Statutes §§ 46b-56, 46b-81, 46b-82 and 46b-84. The court enters the following orders:

"1. The parties shall share joint legal and physical custody of the three minor children pursuant to the parenting plan filed with the court on November 6, 2000. The court agrees that this plan is in the best interest of the children and hereby approves of that agreement and incorporates it by reference as its decree.

"2. The plaintiff shall pay as child support $346 per week. This amount is in accord with the child support guidelines and shall be secured by an immediate wage withholding order. All unreimbursed medical expenses and day care costs shall be in accordance with the state

---

quotation marks omitted.) *East Lyme* v. *New England National, LLC*, supra, 69 Conn. App. 625. Here, with nothing more than the plaintiff's assertion, "[w]e . . . are left to surmise or speculate as to the existence of [the] factual predicate for the trial court's [ruling]." (Internal quotation marks omitted.) Id., 626. We decline to do so and, further, decline to address his claim to the extent it depends on that argument.

of Connecticut child support guidelines. The plaintiff shall receive the dependency exemption for the three minor children.

"3. No alimony is awarded to either party."

At the time of trial, the defendant lived with the parties' three children and a fourth child born to the defendant and Leo Breton. Breton stayed with the defendant approximately four nights per week. Breton testified that he has three children from his former marriage, in addition to the child he has with the defendant. Breton and the defendant planned possibly to live together with their children as one family at some point in time. At the time of the dissolution, Breton paid the defendant approximately $110 per week in child support. Breton also contributed to food bills at times when his children joined him at the defendant's home.

The plaintiff did not offer any evidence that the plan increased his share of expenses for the children. The defendant testified that the expenses she incurred in supporting the children were reduced minimally by the plan and that she would not have enough money overall to support them if she did not receive the full amount of child support provided for in the guidelines.

At the outset, we note our standard of review for claims challenging a court's award of child support. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Russack* v. *Russack*, 58 Conn. App. 517, 522, 753 A.2d 950 (2000).

A

The plaintiff first argues that the court improperly failed to find grounds to deviate from the presumptive amount stated in the guidelines. Specifically, the plaintiff argues that in complying with the plan, he substantially increased his expenses to provide a home for his children. Thus, he argues, he met the criteria outlined in §§ 46b-215a-3[5] and 46b-215a-1 (22)[6] of the guidelines. We disagree.

As previously stated, the plaintiff offered no testimony supporting a finding by the court that the plan resulted in an increase in his share of expenses. See Regs., Conn. State Agencies § 46b-215a-3 (b) (6) (i). Further, the defendant's share of expenses was only slightly reduced under the parenting plan.[7] Without a

---

[5] Section 46b-215a-3 (b) (6) of the guidelines provides in relevant part: "In some cases, there may be special circumstances not otherwise addressed in this section in which deviation from presumptive support amounts may be warranted for reasons of equity. Following are such circumstances: (A) Shared physical custody.

"When a shared physical custody arrangement exists, deviation is warranted *only* when:

"(i) Such arrangement *substantially* reduces the custodial parent's, or substantially increases the noncustodial parent's, expenses for the child; and

"(ii) Sufficient funds remain for the parent receiving support to meet the basic needs of the child after deviation. . . ." (Emphasis added.)

[6] Section 46b-215a-1 (22) of the guidelines provides: " 'Shared physical custody' " means a situation in which the noncustodial parent exercises visitation or physical care and control of the child for periods substantially in excess of a normal visitation schedule. An equal sharing of physical care and control of the child is not required for a finding of shared physical custody."

[7] With respect to the impact of the plan on her expenses, the defendant testified in part:

"[Defendant's Counsel]: [S]ince the pendency of this divorce action, would you have been able to pay the various shelter expenses for your children and their clothing and other expenses had you not received [the court-ordered] support?

"[Defendant]: No. I could not. . . .

"[Defendant's Counsel]: If you were to receive less than guideline child support, would you be able to make those expenses and pay those expenses?

"[Defendant]: No. . . .

proper factual basis, the court properly did not deviate from the child support criteria. See footnote 4. On the basis of our close examination of the record, we conclude that the court could reasonably have concluded as it did and, accordingly, did not abuse its discretion.

B

The plaintiff next argues that the court improperly failed to deviate from the guidelines in determining child support because Breton provides approximately $110 in court-ordered child support and periodic assistance with the groceries. That argument is without merit.

Section 46b-215a-3 (b) (1) (D) of the guidelines provides that the court should take into consideration "the regularly recurring contributions or gifts" not included in the definition of net income of a spouse or domestic partner that may justify a deviation from presumptive support amounts, "but only if it is found that the parent has reduced his or her income or has experienced an *extraordinary reduction* of his or her living expenses as a direct result of such contributions or gifts." (Emphasis added.) Breton's occasional contribution toward the grocery bill hardly could be considered an extraordinary reduction in the defendant's living expenses.

C

The plaintiff next argues that the court improperly calculated child support in that it failed to take into account the defendant's earning capacity. We are not persuaded.

The following facts are relevant. At the time the parties married, the defendant worked at a bank and earned

"[Defendant's Counsel]: So, if you could estimate, how much expense do you think you save every week because [the plaintiff's children are] with [the plaintiff]?
"[Defendant]: Maybe a total of $30."

approximately $20,000 per year. She left that job when their first child was born in 1990. Between 1990 and 1997, she held several part-time and temporary jobs. In 1997, she began to run a day care service in her home. At the time of the dissolution in 2001 she earned approximately $115 per week running the day care service. The defendant testified that the net costs of day care would not warrant her working full-time, given her limited earning capacity.

In its memorandum of decision, the court stated that it entered its child support orders in compliance with the statutory criteria in § 46b-84. That statute provides in relevant part: "In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the . . . earning capacity . . . of each of the parents . . . ." General Statutes § 46b-84 (d). The regulations also refer to a parent's earning capacity as a potential basis for deviating from the guidelines. See Regs., Conn. State Agencies § 46b-215a-3 (b) (1) (B). Thus, although a court must consider earning capacity, the decision whether to deviate from the guidelines on the basis of that criterion is left to the court's sound discretion.

Accordingly, contrary to the plaintiff's apparent argument, the court's decision not to deviate from the guidelines does not demonstrate a failure to consider that criterion. On the basis of the record and the testimony before the court, we cannot conclude that the court abused its discretion.[8]

---

[8] The plaintiff also argues that the court improperly failed to take into account the insurance he provides for the children at the cost of $36 per week. As previously stated, however, the court considered the criteria in the applicable statutes. On the basis of our review of the record, we cannot say the court abused its discretion in fashioning the award as it did.

## III

The plaintiff next claims that the court improperly distributed assets of the marriage. Specifically, the plaintiff argues that the court improperly awarded the defendant half of his stock options in UHG. The plaintiff argues that because the options were not vested, they were not subject to distribution. We are not persuaded.

The following additional facts are necessary for the resolution of the plaintiff's claim. On his financial statement, the plaintiff stated that he had property, including stock options for 200 shares of UHG with a maturity date of August, 2001, with his employer, UHG. In its June 18, 2001 judgment, the court ordered that the "[p]laintiff's stock options with UHG, which mature in August, 2001, shall be divided 50 percent to the plaintiff and 50 percent to the defendant in August, 2001."

We begin with the well settled standard of review for financial awards in a dissolution action. "With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . [J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 530–31, 752 A.2d 978 (1998).

"In distributing the assets of the marital estate, the court is required by § 46b-81 to consider the estate of each of the parties." Id., 531. General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior

Court may assign to either the husband or wife all or any part of the estate of the other. . . ."

Despite the fact that the stock options at issue in this case had not yet matured at the time of dissolution, the options created an enforceable right in the defendant, and they are properly the subject of a distribution of marital assets. See *Bornemann* v. *Bornemann*, 245 Conn. 517. Accordingly, we conclude that the court did not abuse its discretion in distributing the stock options.[9]

## IV

The plaintiff claims finally that the court improperly admitted into evidence a real estate appraisal report of the marital home filed by the defendant. We note at the outset that the plaintiff did not object to the introduction of the report. The claim is, therefore, unpreserved, and we decline to address it.

"This court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . Practice Book § 60-5. Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. . . . By failing to object . . . the defendant failed to preserve this claim." (Internal quotation marks

---

[9] The plaintiff also cites *Wendt* v. *Wendt*, 59 Conn. App. 656, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000), for the proposition that the assets were not divisible under law because they were unvested and acquired after marital assets had stopped being accumulated. In *Wendt*, we concluded that the court properly *valued* similar financial assets by doing so as of the date of dissolution, although it properly *divided* them as of the date of separation, "using the date of separation due to the lack of plaintiff's 'contributions' after the parties' separation." (Internal quotation marks omitted.) Id., 662. The plaintiff has failed to provide us with an adequate record of when and how he acquired the assets. Furthermore, the court did not provide a breakdown of the stock options with respect to how they were distributed. Accordingly, to the extent that the plaintiff's claim depends on that argument, we decline to address it.

omitted.) *State* v. *Duteau*, 68 Conn. App. 248, 256, 791 A.2d 591, cert. denied, 260 Conn. 939, 835 A.2d 58 (2002).

Because the plaintiff failed to object to the admission of the appraisal report and, further, neglected to raise the issue before the trial court, his claim is unpreserved, and we decline to address it further.

The judgment is affirmed.

In this opinion BISHOP, J., concurred.

FLYNN, J., dissenting. I respectfully dissent.

The plaintiff, Christian T. Gilbert, who is representing himself, distinctly raised the issue that the trial court improperly determined that the plaintiff violated "automatic orders" entered in the case under § 25-5 of the Rules of Practice.[1] He stated that the issue already had been decided by Judge Parker. In its memorandum of decision dated June 18, 2001, the trial court held: "In August of 2000, during the pendency of this divorce action, the [plaintiff], in violation of the automatic orders in effect, sold stock options which netted him $8933.55." Prior to trial in this dissolution action, the defendant filed a motion dated December 12, 2000, to

---

[1] Practice Book § 25-5 (a) provides in relevant part: "The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage, legal separation, or annulment, or of an application for custody or visitation. An automatic order shall not apply if there is a prior, contradictory order of a judicial authority. The automatic orders shall be effective with regard to the plaintiff or the applicant upon the signing of the complaint or the application and with regard to the defendant or the respondent upon service and shall remain in place during the pendency of the action, unless terminated, modified, or amended by further order of a judicial authority upon motion of either of the parties:

"(1) Neither party shall sell, transfer, encumber (except for the filing of a lis pendens), conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorneys' fees in connection with this action. . . ."

hold the plaintiff in contempt due to his alleged wilful violation of the automatic orders. Her motion alleged, inter alia, that "[s]ometime after 8/2000, the plaintiff exercised certain Aetna stock options which had accumulated during the marriage, receiving a net check for $8900." The motion claimed that "[t]he plaintiff's transfer of said $8900 to his attorney is an attempt to avoid sharing said marital assets with the defendant, all in violation of the Automatic Orders." Among the relief remedies requested was that the plaintiff be "held in contempt, punished therefor, and that he be ordered to list said $8900 as an asset on his Financial Affidavit." On January 2, 2001, the court, *Parker, J.,* denied the motion and the relief sought. Notice of the decision was given on that date. The defendant took no appeal from Judge Parker's decision. The denial of a motion for contempt is a final judgment for purposes of appeal. *Potter* v. *Board of Selectmen,* 174 Conn. 195, 196, 384 A.2d 369 (1978); *Tobey* v. *Tobey,* 165 Conn. 742, 745, 345 A.2d 21 (1974); *Willocks* v. *Klein,* 38 Conn. App. 317, 320, 660 A.2d 869 (1995). When the defendant let the twenty day appeal period pass, that judgment denying the contempt motion became final at the close of business on January 23, 2001. Practice Book § 63-1.

Nonetheless, the trial court again addressed this issue in its memorandum of decision and made a contrary finding of fact. It made its assignments of property according to the memorandum of decision "[a]fter reviewing all of the facts found . . . ."

We therefore have orders assigning the property of the parties that, at least in part, are based on a factual finding that pretrial orders were violated by the plaintiff's sale of stock options, which the court was without authority or jurisdiction to revisit and redetermine in a way contrary to the earlier final decision of Judge Parker on that issue.

In light of the record just set out, I would hold that the record is adequate for review. I disagree with the majority conclusion that the "plaintiff has failed to establish through an adequate record that the court incorrectly applied the law" because I would hold, on the basis of the record which I have set out, that the trial court had no authority to reverse Judge Parker's final unappealed order on the issue. I would address the plaintiff's claim and conclude that it is well founded.

Our Supreme Court and this court have often described financial orders appurtenant to dissolution proceedings as "entirely interwoven" and as "a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Fahy* v. *Fahy*, 227 Conn. 505, 515, 630 A.2d 1328 (1993); see also *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999); *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984).

Consequently, I would reverse the judgment of the trial court only with respect to the financial orders dividing the property of the parties and remand the case to the trial court for a redetermination of these orders, in light of Judge Parker's decision denying the motion for contempt and denying the requested remedial inclusion of sums derived from the plaintiff's sale of his options on the plaintiff's financial affidavit.