## ALDEN RICHARDS *v.* HELEN RICHARDS
### (AC 21796)

Lavery, C. J., and Schaller and Dranginis, Js.

---

a theory of recovery here. . . . It goes to that issue. It does. Okay? Unfortunately, you did not plead it."

 

Argued October 17, 2002—officially released August 19, 2003

*Louise T. Truax*, with whom were *Sandra Lax* and, on the brief, *Daniel J. Roberts*, for the appellant (defendant).

*Wesley W. Horton*, with whom were *Thomas D. Colin* and, on the brief, *Samuel V. Schoonmaker IV*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. This appeal concerns the propriety of the trial court's rulings on two postjudgment motions in this marital dissolution action. On appeal, the defendant, Helen Richards, claims that the court improperly (1) opened the judgment of dissolution pursuant to a motion to set aside the judgment that was filed by the

plaintiff, Alden Richards, and (2) denied her motion for contempt. We agree and, accordingly, reverse the judgment of the trial court and remand the case for further proceedings.

The following facts are relevant to our resolution of the defendant's appeal. The court dissolved the parties' marriage on July 10, 1998. A separation agreement between the parties was incorporated in the court's decree.[1] Counsel represented both parties when they entered into the separation agreement. The agreement required, among other things, that the plaintiff make monthly payments of alimony and child support, and included a property settlement in the form of lump sum payments over time that were based on his annual income.

On October 26, 1999, the defendant filed a revised motion for contempt, alleging that the plaintiff had failed to pay certain financial obligations as required by the parties' separation agreement. One year later, on October 17, 2000, the plaintiff filed a motion to open the judgment of dissolution on the ground of mutual mistake as to the "cash disbursements" defined in paragraph 4.2 of the separation agreement. After concluding that the definition of "cash disbursements" in the separation agreement was "unworkable," the court granted the plaintiff's motion to open and denied the defendant's motion for contempt, finding that the plaintiff had not wilfully violated the provisions of the agreement.[2] The defendant subsequently filed this appeal.

[1] The proceedings leading to the dissolution of marriage commenced in November, 1996, and there were seventy-three docket entries prior to the dissolution on July 10, 1998. Additionally, during the postjudgment phase of the proceedings, there have been ninety-six docket entries. The parties have been represented by counsel during all of those proceedings.

[2] Subsequently, the defendant filed a motion to reargue. After hearing argument on whether the defendant should be allowed to reargue, the court denied the motion. She then filed a motion for articulation. That motion was granted and, in its articulation, the court restated its conclusion that the separation agreement was "unworkable."

## I

The defendant first claims that the court improperly granted the plaintiff's motion to open the judgment of dissolution, which was filed more than four months after the rendering of the dissolution judgment. In support of that claim, the defendant specifically argues that in the absence of a finding of mutual mistake,[3] the court lacked the power to open the judgment.

The plaintiff counters that the four month limitation period contained in General Statutes § 52-212a and Practice Book § 17-4 (a) does not apply because there was a mutual mistake of fact by both parties as to the definition of "cash disbursements." The plaintiff also argues that although he filed a motion to open, the court treated his motion as a motion to clarify the separation agreement, which motion has no time restriction and, therefore, may be filed at any time.[4] Relying on the holding in *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 241, 796 A.2d 1164 (2002), that the court has inherent power to vindicate prior judgments, the plaintiff maintains that the court "acted within its discretion by rendering a decision that corrected the application of the separation agreement so that it was consistent with the parties' intentions." We agree with the defendant.

Initially, we must determine whether we have jurisdiction to hear that portion of the defendant's appeal

[3] The plaintiff filed his motion to open on the ground of mutual mistake. The parties agree that there was no claim of accident, consent, duress or fraud.

[4] We note that the plaintiff, in his brief, cites several cases for the proposition that the court's decision should be treated as a motion to clarify rather than a motion to open the dissolution judgment. See, e.g., *Santoro* v. *Santoro*, 70 Conn. App. 212, 217–18, 797 A.2d 592 (2002); *Jaser* v. *Jaser*, 37 Conn. App. 194, 200–204, 655 A.2d 790 (1995); see also *Harrison* v. *Harrison*, 94 Conn. 280, 283, 108 A. 800 (1920). Those decisions, however, do not support the plaintiff's argument because the record discloses that the court did not clarify or reform the portion of the original agreement concerning the definition of "cash disbursement."

concerning the court's opening of the judgment of dissolution. That determination turns on whether the appeal is taken from a final judgment.[5] Ordinarily, the granting of a motion to open a prior judgment is not a final judgment, and, therefore, not immediately appealable. See General Statutes §§ 51-197a and 52-263; Practice Book § 61-1; see also *Cardona* v. *Negron*, 53 Conn. App. 152, 156, 728 A.2d 1150 (1999). Our Supreme Court, however, has carved out an exception to that rule where a colorable claim is made that the trial court lacked the power to open a judgment. See *Solomon* v. *Keiser*, 212 Conn. 741, 747, 562 A.2d 524 (1989). The defendant's claim "puts us in the anomalous position of having to decide the [defendant's] principal claim on this appeal . . . in order to decide whether we have jurisdiction to entertain the appeal." *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 419, 426 A.2d 1324 (1980). Because we conclude that the court lacked authority to open the judgment, we have jurisdiction to consider the defendant's claim.

We begin our analysis by noting that the parties entered into a separation agreement that became the judgment dissolving their marriage. "A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . [It is] the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement."

[5] On October 3, 2002, we ordered the parties to come to oral argument prepared to give reasons, if any, why the appeal should not be dismissed for lack of an appealable final judgment. Both parties complied with our order.

(Internal quotation marks omitted.) *Magowan* v. *Magowan*, 73 Conn. App. 733, 736–37, 812 A.2d 30 (2002), cert. denied, 262 Conn. 934, 815 A.2d 134 (2003), quoting *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990).

"Appellate jurisdiction is limited to appeals from judgments that are final. *Solomon* v. *Keiser*, [supra, 212 Conn. 745]. An order opening a judgment is ordinarily not a final judgment for purposes of appeal except where the issue raised is the power of the court to open. Id., 746–48. The judgment rendered in an action for dissolution of a marriage is final and may not be opened or set aside unless a motion to do so is filed, pursuant to Practice Book 326 [now § 17-4], within four months from the date of its rendition. *Daly* v. *Daly*, 19 Conn. App. 65, 67, 561 A.2d 951 (1989). After that period, absent waiver, consent or other submission to jurisdiction, a court lacks the power to modify or correct a judgment other than for clerical reasons. *Misinonile* v. *Misinonile*, 190 Conn. 132, 134, 459 A.2d 518 (1983). A judgment rendered may be opened after the four month limitation if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake. See *Celanese Fiber* v. *Pic Yarns, Inc.*, 184 Conn. 461, 466, 440 A.2d 159 (1981); *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980); see also *Sparaco* v. *Tenney*, 175 Conn. 436, 437–38, 399 A.2d 1261 (1978)." *Hill* v. *Hill*, 25 Conn. App. 452, 454–55, 594 A.2d 1041, cert. denied, 220 Conn. 917, 597 A.2d 333 (1991).

It is well recognized that our courts have inherent power to open, correct and modify judgments, but that authority is restricted by statute and the rules of practice. *Batory* v. *Bajor*, 22 Conn. App. 4, 8, 575 A.2d 1042, cert. denied, 215 Conn. 812, 576 A.2d 541 *(*1990*)*. A motion to open a judgment is governed by General Statutes § 52-212a and Practice Book § 17-4. Section

52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ." Practice Book § 17-4 states essentially the same rule.[6]

The plaintiff argues that the parties did not have a mutual understanding of the definition "cash disbursements." To the contrary, the defendant maintains that she was not mistaken as to the definition and, therefore, any mistake was unilateral and not mutual. In its memorandum of decision, the court found merely that the definition of "cash disbursements" in the separation agreement was "unworkable." The court did not make an express finding of mutual mistake. "The kind of mistake [however] that would justify the opening of a stipulated judgment under § 52-212a must be mutual; a unilateral mistake will not be sufficient to open the judgment. *Solomon* v. *Keiser*, 22 Conn. App. 424, 427, 577 A.2d 1103 (1990); see also *Acheson* v. *White*, 195 Conn. 211, 215–16, 487 A.2d 197 (1985); *Celanese Fiber* v. *Pic Yarns, Inc.*, [supra, 184 Conn. 466] . . . ." *Magowan* v. *Magowan*, supra, 73 Conn. App. 741. Because there was no finding of mutual mistake as to the definition of "cash disbursement" or any other basis established by § 52-212a, the defendant is correct in challenging the court's authority to open the judgment. We therefore have jurisdiction to hear the claim and

---

[6] Practice Book § 17-4 (a) provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. . . ." That language has been incorporated into Practice Book § 25-38.

conclude that the court lacked authority to open the judgment.[7]

## II

Next, the defendant claims that the court improperly denied her motion for contempt.[8] Specifically, the defendant claims that the court improperly construed certain provisions of the parties' separation agreement concerning cash disbursements and, on the basis of that incorrect construction, failed to find the plaintiff in contempt for not complying with the provisions of the dissolution judgment regarding alimony, child support and property division payments. In response, the plaintiff contends that he could not comply with the terms of the dissolution agreement because it is ambiguous on its face. We agree with the defendant.

We begin by addressing the appropriate standard of review. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the

---

[7] Furthermore, a review of the court's memorandum of decision reveals that the court did not reform or clarify the agreement. Moreover, the defendant argues, and we agree, that the plaintiff is not entitled to reformation of his contract with the defendant. Connecticut law has firmly established that "[r]eformation is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. . . . [R]eformation is also available in equity when the instrument does not express the true intent of the parties owing to the mistake of one party . . . ." (Internal quotation marks omitted.) *Derby Savings Bank* v. *Oliwa*, 49 Conn. App. 602, 604, 714 A.2d 1278 (1998). There was no finding of mistake to warrant the reformation of the contract sued on, and, therefore the settlement agreement does not come properly within the equity jurisdiction of the trial court.

[8] "The denial of a motion for contempt is a final judgment for purposes of appeal. *Potter* v. *Board of Selectmen*, 174 Conn. 195, 196, 384 A.2d 369 (1978); *Tobey* v. *Tobey*, 165 Conn. 742, 745, 345 A.2d 21 (1974); *Willocks* v. *Klein*, 38 Conn. App. 317, 320, 660 A.2d 869 (1995)." *Gilbert* v. *Gilbert*, 73 Conn. App. 473, 487, 808 A.2d 688 (2002) (*Flynn, J.*, dissenting).

actions or inactions of the [party] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Citation omitted; internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001). Here, the defendant's argument specifically attacks the factual findings that the court relied on to conclude that the plaintiff was not in contempt. "Therefore, in addition to reviewing the propriety of the court's decision as a general matter, we first review the trial court's factual determinations. In so doing, we apply our clearly erroneous standard, which is the well settled standard for reviewing a trial court's factual findings. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; internal quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 353 n.2, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).

Some further elaboration of certain facts is necessary to our resolution of the defendant's claim. Since 1991, the plaintiff has been the president, majority stockholder and chief operating officer of Space Machine Advisors (company). The company provides risk management and insurance services to the satellite industry.[9] The plaintiff's 1998 federal income tax return indicated that he had a gross income of $2,702,500. The separation agreement contemplated that plaintiff's "cash disbursements" from the company could be as

---

[9] The company is a subchapter S corporation, which allows the business to pass through its income and losses to the plaintiff. All the earnings of the corporation during the taxable year must be reported as individual income by the stockholders. See *Outdoor Development Corp.* v. *Mihalov*, 59 Conn. App. 175, 180 n.7, 756 A.2d 293 (2000); see also 26 U.S.C. § 1361 et seq.

much as $4 million per year. At the time he testified during the hearing on the motion to open, the plaintiff alleged that his business had lost its major client, creating a precipitous decline in revenue, and that prior thereto, his earnings generally consisted of a base salary of $130,000 and a bonus of 5 percent, which bonus was paid to him when a satellite was launched. The plaintiff testified that from the bonus earnings, he deducted payments to affiliate brokers abroad and business operating expenses. He further testified that the company charged his officer loan account to pay the business and personal expenses he incurred in between satellite launches. After a successful launch, those loan accounts were retired. It is those loan payments as they apply to the definition of "cash disbursements" that are at the heart of the defendant's claim.

In its memorandum of decision, the court found that the definition of "cash disbursements" contained in paragraph 4.2[10] of the separation agreement was further refined in paragraph 4.1,[11] which concerns the officer's

---

[10] Paragraph 4.2 of the separation agreement states in relevant part: "For purposes of this Agreement 'cash disbursements' shall be defined to mean any income actually received by the Husband and any personal expenses paid on behalf of the Husband by Space Machine Advisors, any subsequent business or subsidiary thereof or by virtue of any employment, except for (1) usual, reasonable and actual business expense reimbursements; (2) any amounts paid by the Husband to any taxing authority in satisfaction of the joint 1997 income tax liability in the approximate amount of $395,000; and (3) dividends declared in 1998 for the purpose of repaying loans presently due to his company. 'Cash disbursements' shall include earned income and, in particular, all income from wages, salaries, bonuses, consulting or other fees, commissions, director's fees, dividends from employment, and compensation by reason of past, present or future employment, in whatever form received, including payments in cash or in kind, stock or otherwise. . . ."

[11] Paragraph 4.1 of the separation agreement provides:

"Commencing as of the First Day of August, 1998, in accordance with paragraph 4.5 below, the Husband shall pay to the Wife, during his lifetime, until her death, remarriage, or July 31, 2013, whichever event shall first occur, the following sums of alimony:

"(a) Commencing as of August 1, 1998 through and including December 31, 2000, the Husband shall pay alimony, deductible by the Husband and taxable to the Wife, to the Wife in accordance with the following schedule:

loans. The court rejected the defendant's argument that by its plain and unambiguous terms, the definition of cash disbursements in paragraph 4.2 should be read to include the officer's loans made by the company to pay the plaintiff's personal expenses. As a consequence, the court found that "[b]orrowing money from the corporation does not produce taxable income for the plaintiff, nor would sharing the various cash disbursements create a deduction for [the plaintiff] or taxable income to [the defendant]." The court further found that "[t]he cash disbursements can be read to mean that they are to be divided between the parties according to the

| Husband's Annual Cash Disbursement from Space Machine Advisors | Percentage of Cash Disbursements paid to Wife as Alimony |
|---|---|
| 0-$1,500,000 | 24% |
| $1,500,000-$2,000,000 | 0% |
| $2,000,000-$3,500,000 | 30% |
| $3,500,000-$4,000,000 | 20% |

"The Wife shall not participate in the Husband's 'cash disbursements' from Space Machine Advisors, or any successor company of the Husband's, in the excess of $4,000,000 per annum.

"(b) Commencing as of January 1, 2001 through and continuing thereafter through and until July 31, 2013, at which time such payments of alimony shall in all events terminate, the Husband shall pay alimony, deductible by the Husband and taxable to the Wife, to the Wife in accordance with the following schedule:

| Husband's Annual Cash Disbursement from Space Machine Advisors | Percentage of Cash Disbursements paid to Wife as Alimony |
|---|---|
| 0-$500,000 | 35% |
| $500,000-$1,000,000 | 30% |
| $1,000,000-$1,500,000 | 25% |
| $1,500,000-$2,500,000 | 20% |

"The Wife shall not participate in the Husband's 'cash disbursements' from Space Machine Advisors, or any successor company of the Husband's in the excess of $2,500,000 per annum.

"(c) The Husband represents that the only launches currently scheduled are those set forth on Schedule B.

"B. The Husband further represents that the only income received by him to date in 1998 is his monthly salary and dividends declared in 1998 for the purpose of repaying loans due to his company."

schedules when they become taxable income." In short, the court concluded that the timing of the tax event had a bearing on the definition of "cash disbursements." In its articulation, the court concluded that the provisions of article four of the separation agreement were inconsistent and hence are "unworkable." Our review of the evidence before the court, namely, the parties' separation agreement, leads us to conclude that the court's findings were clearly erroneous, and were not logical and amply supported by the evidence.

A fair reading of the parties' separation agreement shows that the plaintiff had to make alimony, child support and lump sum property division payments from the cash disbursements he received. Paragraph 4.2 of the dissolution agreement clearly defines "cash disbursements" as "any income actually received by the Husband and *any personal expenses paid on behalf of the Husband by Space Machine Advisors*, any subsequent business or subsidiary thereof or by virtue of any employment, except for (1) usual, reasonable and actual business expense reimbursements; (2) any amounts paid by the Husband to any taxing authority in satisfaction of the joint 1997 income tax liability in the approximate amount of $395,000; and (3) dividends declared in 1998 for the purpose of repaying loans presently due to his company. 'Cash disbursements' shall include earned income and, in particular, all income from wages, salaries, bonuses, consulting or other fees, commissions, director's fees, dividends from employment, and compensation by reason of past, present or future employment, in whatever form received, including payments in cash or in kind, stock or otherwise."[12] (Emphasis added.) That language makes clear that company funds were used to pay for personal expenses and therefore should be included as cash disbursements. As stated previously, the dissolution agreement explicitly

---

[12] See footnote 10.

provides only three exceptions to cash disbursements: "(1) usual, reasonable and actual business expense reimbursements; (2) any amounts paid by the [defendant] to any taxing authority in satisfaction of the joint 1997 income tax liability in the approximate amount of $395,000; and (3) dividends declared in 1998 for the purpose of repaying loans presently due to his company. . . ." None of those exceptions applies to the officer's loans.

Because we conclude that the court's underlying findings were clearly erroneous, we conclude that the court's ultimate finding that the plaintiff did not wilfully fail to comply with his obligations under the separation agreement was not established by sufficient evidence. Therefore, we conclude that the court did not act within its discretion.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion to open the judgment and to conduct a hearing on the defendant's motion for contempt.

In this opinion the other judges concurred.