BRIAN T. DOUGHERTY *v.* DENISE A. DOUGHERTY
(AC 28603)

DiPentima, Lavine and West, Js.

Submitted on briefs February 13—officially released July 8, 2008

*Brian T. Dougherty*, pro se, the appellant (plaintiff), filed a brief.

*Jeffrey B. Sienkiewicz* filed a brief for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Brian T. Dougherty, appeals from the judgment of the trial court granting the motion of the defendant, Denise A. Dougherty, to modify its earlier judgment dissolving the marriage of the parties. On appeal, the plaintiff argues that the court improperly (1) granted the motion to open and to modify a property settlement beyond the four month time limitation specified in General Statutes § 52-212a and Practice Book § 17-4 and (2) limited its focus on certain assets in modifying the judgment.[1] We disagree with

---

[1] The plaintiff also argues that (1) the court improperly allowed the defendant to reclaim her original motion for modification beyond three months from the date of filing in violation of Practice Book § 25-34 (c), (2) the defendant had unclean hands and (3) the court did not give him adequate notice of the hearing on the motion, recessed the hearing and never reconvened the hearing before issuing a ruling. Our review of the record reveals that these claims were not raised before the trial court and, therefore, are not properly before this court. We therefore decline to review these claims. See Practice Book § 60-5; *Intercity Development, LLC* v. *Andrade*, 286 Conn. 177, 187–88, 942 A.2d 1028 (2008).

With regard to the plaintiff's claim that he did not have adequate notice of the hearing on the defendant's motion, we note, however, that on Novem-

the plaintiff and, accordingly, affirm the judgment of the trial court.

The following facts are relevant to the resolution of the plaintiff's appeal. The marriage of the parties was dissolved on September 4, 1998. The dissolution judgment incorporated by reference the terms of a separation agreement between the parties also dated September 4, 1998. Section 8.5 of the separation agreement, entitled "Pensions, Stocks, 401 (k) Plans, Retirement Accounts, Etc.," provides: "One-half of the [plaintiff's] defined benefit retirement plan accrued to the date of the dissolution of the marriage of the parties shall be transferred to the [defendant] by way of a Qualified Domestic Relations Order (QDRO). The Superior Court shall retain jurisdiction over said QDRO." On July 21, 2006, the defendant filed an amended motion for modification of judgment on the ground that the Indiana public employees' retirement fund does not honor qualified domestic relations orders. As relief, the defendant requested that the court provide an alternative means of dividing the plaintiff's property interest in his retirement plan.

In its memorandum of decision granting the defendant's motion, the court noted that on the date of the dissolution, the plaintiff was employed by the state of Indiana and was a member of the Indiana public employees' retirement fund. At the time of the dissolution, neither party knew that pursuant to Indiana law, the public employees' retirement fund is not required to honor, and does not honor, qualified domestic relations orders. Therefore, half of the plaintiff's defined benefit retirement plan was not transferred to the defendant. The court found that on the date of the dissolution

ber 14, 2006, the plaintiff agreed that the court could consider the motion for modification at the conclusion of the evidence on a related civil matter and motion for contempt, and that this is what in fact occurred.

judgment, the plaintiff, as a member of the Indiana public employees' retirement fund, had a vested interest in a future retirement benefit consisting of (1) an annuity savings account and (2) a monthly pension for life. The parties agreed that the plaintiff's vested interest in the annuity savings account totaled $38,105.09 as of September 30, 1998, and that half of that interest totaled $19,052.55. The parties also agreed that the sum of $814 per month represented the pension benefit to be received by the plaintiff, exclusive of the annuity savings account, calculated as of September 4, 1998. Half of that estimated monthly pension benefit totaled $407 per month.

At the hearing on the motion for modification, the plaintiff testified that the parties intended to divide the defined benefit pension only and that he was to retain the annuity savings account. The defendant testified regarding her understanding that she would be getting half of the plaintiff's pension plan. She testified, however, that she was unaware of the existence of the annuity savings account at the time the separation agreement was executed because the plaintiff did not disclose it to her. According to the defendant, she learned about the annuity savings account when she was informed that the state of Indiana would not honor the qualified domestic relations order. At that time, the defendant also learned of the plaintiff's position that she was not entitled to half of the annuity savings account. The defendant testified that she was seeking an order that provided for the distribution of half of the plaintiff's entire retirement benefit, which included both the annuity savings account and the monthly pension.

The court found that there was a mutual mistake by the parties concerning whether the retirement plan could be divided by the qualified domestic relations order and that this provided a sufficient ground to open

the judgment.[2] The court, therefore, issued an order providing an alternative method of dividing the plaintiff's interest in his deferred compensation, including the annuity savings plan.[3] The plaintiff then filed this appeal.

[2] The court further found that there was no mutual mistake with regard to the annuity savings account, as the plaintiff had known about the account and had intended to keep it, and the defendant had not known that it existed. Although the court found that the defendant had not proven fraudulent nondisclosure by the plaintiff, it found that she had proven that the plaintiff's financial affidavits contained negligent misrepresentations by nondisclosure.

[3] The order provides: "The judgment shall be modified by substituting the following order in lieu of the provisions of paragraph 8.5 of the separation agreement:

"Benefits to which the [plaintiff] is entitled as a member of the public employees' retirement fund of the state of Indiana, consisting of an annuity savings account and a monthly pension, are hereby assigned and transferred pursuant to § 46b-81 of the General Statutes, and are to be distributed to the defendant . . . as follows:

"[A] Annuity savings account:

"[1] The [plaintiff] shall designate the [defendant] as the beneficiary of the [plaintiff's] state of Indiana public employees' retirement fund annuity savings account, the 'fund,' to the extent of $19,052.55, which amount represents one half of the [plaintiff's] interest in the fund annuity savings account as of September 30, 1998, plus interest on said amount at the interest rate paid by the Indiana public employment retirement fund for the 'guaranteed fund' for the period from October 1, 1998, to the date of payment, compounded quarterly.

\* \* \*

"[2] The [plaintiff] shall pay to the [defendant] the sum of $19,052.55, which amount represents one half of the [plaintiff's] interest in the public employees' retirement fund annuity savings account as of September 30, 1998, plus interest on said amount at the interest rate paid by the Indiana public employment retirement fund for the 'guaranteed fund' for the period from October 1, 1998, to the date of payment, compounded quarterly.

\* \* \*

"[B] Pension

"[1] The [plaintiff] shall pay to the [defendant] the sum of $407 per month commencing on the earliest of the following dates: [a] the first month that the [plaintiff] is eligible to receive or receives monthly pension benefits from the state of Indiana public employees' retirement fund; [b] October 1, 2019, the first day of the month immediately after the date (September 8, 2019) that the [plaintiff] reaches sixty-five years of age. Said amount represents one half of the estimated monthly pension benefit which the [plaintiff]

I

The plaintiff first argues that the court improperly opened and modified the judgment beyond the four month time limitation specified in General Statutes § 52-212a and Practice Book § 17-4. We disagree.

"[O]ur courts have inherent power to open, correct and modify judgments, but that authority is restricted by statute and the rules of practice. . . . A motion to open a judgment is governed by General Statutes § 52-212a and Practice Book § 17-4. Section 52-212a provides in relevant part: 'Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . .' Practice Book § 17-4 states essentially the same rule." (Citation omitted.) *Richards* v. *Richards*, 78 Conn. App. 734, 739–40, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003). "Courts have interpreted the phrase, '[u]nless otherwise provided by law,' as preserving the common-law authority of a court to open a judgment after the four month period." *Terry* v. *Terry*, 102 Conn. App. 215, 222 n.5, 925 A.2d 375, cert. denied, 284 Conn. 911, 931 A.2d 934 (2007).

"A judgment rendered may be opened after the four month limitation if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake." (Internal quotation marks omitted.) *Richards* v. *Richards*, supra, 78 Conn. App. 739. "Whether proceeding under the common law or a

is eligible to receive from the fund calculated as of the date of dissolution, September 4, 1998. The [plaintiff] shall make such payment to the [defendant] so that it is received by the [defendant] not later than the fifteenth (15th) day of each month commencing with the first month that the [plaintiff] is obligated to make payments as described above."

statute, the action of a trial court in granting or refusing an application to open a judgment is, generally, within the judicial discretion of such court, and its action will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion." (Internal quotation marks omitted.) *Nelson* v. *Charlesworth*, 82 Conn. App. 710, 713, 846 A.2d 923 (2004).

As stated previously, the court in the present case found that there was a mutual mistake of the parties concerning whether the retirement plan could be divided by the qualified domestic relations order and that this provided a sufficient ground to open the judgment. On the basis of our review of the record, we conclude that the court acted within its authority and discretion in opening the judgment beyond the four month time period specified in General Statutes § 52-212a and Practice Book § 17-4.[4] To the extent that the plaintiff is arguing that the motion for modification was not filed within a reasonable time after the defendant had learned of the mutual mistake and that this constituted laches or undue delay, we note that this claim was not raised before the trial court and, therefore, is not properly before this court. See *Intercity Development, LLC* v. *Andrade*, 286 Conn. 177, 187, 942 A.2d 1028 (2008) ("[i]t is well established that claims that have not been properly raised at trial are not reviewable by this court"). Because the plaintiff did not raise this claim in the trial court, we decline to review it on appeal.

## II

The plaintiff next argues that the court improperly limited its focus on certain assets in entering its orders modifying the dissolution judgment. Specifically, the plaintiff contends that the court, in correcting the parties' mutual mistake, exceeded its authority by transferring a portion of the annuity savings account to the

[4] The plaintiff makes no claim that the court's finding of mutual mistake was improper.

defendant. According to the plaintiff, the annuity savings account is exempt from division pursuant to the mutual release provisions of § 13.1 of the parties' separation agreement.[5] We disagree.

Our interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not

[5] Section 13.1 of the parties' separation agreement, entitled "Mutual Releases," provides: "Subject to the provisions of this Agreement, each party has remised, released and forever discharged and by this Agreement does for himself or herself and his or her heirs, legal representatives, executors, administrators and assigns remise, release and forever discharge the other of and from all cause or causes of action, claims, rights or demands whatsoever, in law or in equity, including any interest in any pension, profit-sharing, deferred compensation or other qualified benefit plan whether said interest arises by contract or pursuant to the Retirement Equity Act of 1984 or otherwise which either of the parties hereto ever had or now has against the other, except any or all cause or causes of action for dissolution of marriage or legal separation."

necessitate a conclusion that the language is ambiguous. . . . If the language of a contract is clear and unambiguous, the intent of the parties is a question of law, subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008).

As stated previously, § 8.5 of the separation agreement provides in part that "[o]ne-half of the [plaintiff's] defined benefit retirement plan accrued to the date of the dissolution of the marriage of the parties shall be transferred to the [defendant] . . . ." The language of this section clearly and unambiguously indicates that half of the plaintiff's defined benefit retirement plan was to be transferred to the defendant. The court, in interpreting this provision, held that the plaintiff had a vested interest in a future retirement benefit consisting of an annuity savings account and a monthly pension paid for life. The court, therefore, rendered a modified judgment that provided for the division of the plaintiff's interest in both the annuity savings account and the pension.

The plaintiff argues that the court improperly found that the annuity savings account was part of his defined benefit retirement plan subject to division pursuant to § 8.5. He contends that as part of his employment with the state of Indiana, he was entitled to two separate and distinct pensions: the defined benefit pension plan and the annuity savings account. In this regard, the plaintiff testified at the hearing that the parties intended to divide the defined benefit pension only and that he was to retain the annuity savings account.[6] We conclude, however, that the court properly found that the

---

[6] In his testimony, the plaintiff acknowledged that § 8.5 of the parties' separation agreement did not mention the annuity savings account. He also acknowledged that the agreement did not specify that he was to keep the annuity savings account. He contended, however, that the annuity savings account was exempt from distribution pursuant to § 13.1 of the agreement, which contained the mutual releases by the parties.

annuity savings account was subject to division pursuant to this section.

As argued by the defendant at the hearing in this matter, § 5-10.2-4-2 (a) of the Indiana Code provides that "[u]nless a member elects otherwise under this section, the retirement benefit for each member consists of the sum of a pension provided by employer contributions plus an annuity provided by the amount credited to the member in the annuity savings account." Ind. Code Ann. § 5-10.2-4-2 (a) (LexisNexis 2006). In addition to the applicable Indiana code provisions, the court also considered the testimony of the parties regarding their intent at the time they had signed the separation agreement as well as the documentary evidence pertaining to the Indiana public employees' retirement fund.[7] The court further reviewed the plaintiff's financial affidavits and concluded that they were misleading as to the nature and value of the plaintiff's deferred compensation benefits.[8] The court continued

---

[7] The defendant introduced without objection three documents printed from the state of Indiana's Internet site describing the public employees' retirement fund. The first of these documents stated: "Your [public employees' retirement fund] retirement benefits are made up of two separate and distinct pieces—the Defined Benefit Pension and your Annuity Savings Account. Both pieces are funded by separate contributions."

The defendant also introduced a letter dated August 26, 2002, to attorney William J. Wellman, the plaintiff's prior counsel, from the public employees' retirement fund, specifying, in part, that "[t]he member has ten or more years of creditable service under the Fund and is vested for a future retirement benefit. This benefit has two parts—a monthly pension paid for life and an annuity savings account that the member can elect to receive either on a monthly basis or as a lump sum payment." The letter further set forth the balances in the plaintiff's annuity savings account as of June 30 and September 30, 1998.

[8] The court stated: "The affidavit dated September 9, 1997 contains the following item listed under 'deferred compensation': 'public employees' retirement fund—(available only through employment termination)—$30,000.' The affidavit dated September 4, 1998, has two items listed under 'deferred compensation' but still shows $30,000 as the single value. The first item is: 'public employees' retirement fund—(available only through employment termination).' The second item is 'deferred benefit plan—(1.1 x # of years and highest three years).'

by noting that "[t]he plaintiff might reasonably have expected the defendant to rely upon the misleading nature of these affidavits and assume that she had agreed to receive one half of the full value of *all* of the retirement benefits owned by the plaintiff." (Emphasis added.) On the basis of our review of the record, we conclude that the court properly found that the plaintiff, as a member of the Indiana public employees' retirement fund, had a vested interest in one future retirement benefit consisting of two components: an annuity savings account and a monthly pension paid for life, and that both components of this benefit were subject to division pursuant to § 8.5 of the separation agreement. The plain language of § 13.1 of that agreement contains no exemption for either component.

The judgment is affirmed.

In this opinion the other judges concurred.

"I find that the overall effect of these affidavits is materially misleading as to the nature and value of the plaintiff's deferred compensation benefits. It is not at all clear that the first item is a savings plan with any value. It is not accurate that the value of the two items was $30,000. The amount in the annuity savings plan was $38,105.09; the vested right to receive $814 per month at retirement must have added substantial value as well. The plaintiff might reasonably have expected the defendant to rely upon the misleading nature of these affidavits and assume that she had agreed to receive one half of the full value of all of the retirement benefits owned by the plaintiff."