LORI FITZSIMONS *v.* STEPHEN FITZSIMONS
(AC 29919)

Flynn, C. J., and Alvord and Hennessy, Js.

Argued June 2—officially released August 11, 2009

*Pamela A. Olejarczyk*, for the appellant (defendant).

*David N. Rubin*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. In this marital dissolution action, the defendant, Stephen Fitzsimons, appeals from the judgment of the trial court with respect to the court's financial orders. Specifically, the defendant claims that the court abused its discretion by (1) modifying the marital property division postjudgment and (2) awarding the plaintiff, Lori Fitzsimons, relief not claimed by her at trial. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The parties were married on March 23, 1991, and had three minor children as of the date of dissolution. In November, 2006, the plaintiff filed a complaint seeking a dissolution of her marriage to the defendant, alleging that their marriage had broken down irretrievably. The parties entered into a custody agreement on February 28, 2008, which the court found to be fair and equitable. The parties were unable, however, to resolve the issues of alimony, child support and the division of property and debts. The court held a limited contested hearing on those issues on February 28, 2008.

The plaintiff suggested in her proposed orders that the defendant vacate the marital residence on or before

June 1, 2008, and that she retain exclusive possession of the marital residence until the parties' youngest child reached the age of eighteen.[1] The plaintiff further proposed that she pay the mortgage, insurance, taxes and utilities for the property during that period as well as repairs costing less than $500. She also proposed that the defendant be permitted to retain personal property with a combined value of $80,864 to provide him with funds to relocate.[2] Finally, the plaintiff proposed that upon the youngest child's attainment of the age of eighteen, the house be sold and the net proceeds shared equally by the parties.

The defendant's proposed orders provided in relevant part that the plaintiff would quitclaim her interest in the marital residence to the defendant. In exchange, the defendant offered to refinance the property within sixty days, pay the existing mortgages in full and pay the plaintiff half of the net equity in the property.

The court issued its memorandum of decision on March 14, 2008. The court found that "[t]he journey to an irretrievable breakdown began in about 1997, when the [defendant] began to drink too much and too often. He consumed alcohol almost daily. His consumption increased in frequency and quantity. He drank to an excess. He easily consumed a thirty pack of beer in two days. When he drank, he became controlling. His mood changed in direct relation to the amount of alcohol he consumed. He became increasingly argumentative and angry. His anger seemed to 'come from out of nowhere.' He was unabashedly insulting, demeaning and verbally abusive toward the [plaintiff] in private and in public. In the presence of company, guests,

---

[1] The parties' youngest child will reach the age of eighteen in June, 2014. The plaintiff also requested the discretion to sell the residence before June, 2014.

[2] The plaintiff suggested that the $80,864 then be repaid her at the time of the sale of the property.

friends, their children and other children, he called her vulgar and vile names, humiliated her and degraded and debased her. She never argued back. She never called him derogatory names. She never reacted, retorted or responded to him in kind. Many times he reduced her to tears in front of their friends and children. His unfettered alcohol consumption and behavior toward her while consuming alcohol is the principal cause of the breakdown of the marriage.

"They jointly own the marital residence at 165 Meadowside Road in Milford. Its fair market value is $320,000. There is a balance of $126,500 due on a first mortgage. There is [a] balance of $11,203 due on a home equity line of credit secured by a second mortgage. The equity value of the home is $182,298.

"Both parties contributed significantly and substantially to the acquisition, preservation, expenses and appreciation of the home. The [plaintiff] wants to remain in the home until their youngest child's eighteenth birthday, and the right to sell (at her discretion) the property on or before the youngest child's eighteenth birthday and then equally divide the net proceeds. The [defendant] also wants to retain and remain in the home. He has qualified for a refinance mortgage loan in the amount of $220,000. He is able to refinance the property within sixty days and is willing to pay the [plaintiff] half of the 'net equity.' "

In its decision, the court ordered that "[t]he [defendant] shall immediately refinance the marital home . . . and terminate the [plaintiff's] liability on the existing first mortgage and the . . . home equity line of credit by May 30, 2007. . . . The [plaintiff] shall cooperate with the [defendant] to effectuate a refinance of the property. She shall quitclaim all of her interest in the real property to the [defendant] for that purpose. He shall pay to the [plaintiff] by May 30, 2008, the sum

of . . . \$91,149.00 . . . as her share of the equity in the property upon refinancing it."[3]

The plaintiff filed a postjudgment motion to reargue on March 20, 2008. The plaintiff argued, inter alia, that, in light of the defendant's fault in causing the breakdown of the marriage and because the court declined to allow her to remain in the house until her youngest child reached the age of eighteen, she should be awarded a greater share of the equity in the marital residence. The plaintiff requested that she be awarded 60 percent and the defendant 40 percent. The court granted the plaintiff's motion to reargue, conducted a hearing on April 14, 2008,[4] and opened the judgment.

On April 16, 2008, the court issued a decision on the plaintiff's motion. The court found that "[u]pon reconsideration, the court agrees with the plaintiff that the defendant's conduct should not be weighed equally with the other relevant statutory criteria and should be accorded greater consideration in the division of the equity in the marital home by awarding the plaintiff a greater share (60 percent) and a lesser share (40 percent) to the defendant." The court modified its order to provide that "the payment to the plaintiff by the defendant pursuant to . . . the memorandum of decision rendering judgment, dated March 14, 2008, shall be \$109,379."

On May 6, 2008, the defendant filed a postjudgment motion to reargue. The defendant argued that the March 14, 2008 decision "granted the *equal* split sought by *both* parties in their respective statements of claim."

---

[3] The court entered orders disposing of all of the marital assets, but only the court's distribution of the equity in the marital residence is at issue in this appeal.

[4] No evidence was admitted at the hearing. The parties submitted a stipulation as to some matters raised in the motion to reargue, and the court allowed argument regarding the division of the equity in the marital residence.

(Emphasis in original.) In addition, the defendant argued that "[nowhere] did the plaintiff seek for a disparate split of the marital equity; moreover, virtually all of the relief sought by the plaintiff was granted by the first memorandum of decision, and no further consideration should have been given." The court denied the motion, stating that "[c]ounsel [and the] parties had the opportunity to present all of their claims and arguments at the time of the hearing on the reargument on [April 14, 2008]."

I

First, the defendant claims that the court abused its discretion by modifying the marital property division postjudgment. Specifically, the defendant argues that a division of marital property is not subject to postjudgment modification absent fraud or mutual mistake. We disagree.

It is well settled that a civil judgment of the Superior Court may be opened if a motion to open or set aside is filed within four months of the issuance of a judgment. *Passamano* v. *Passamano*, 228 Conn. 85, 88 n.4, 634 A.2d 891 (1993); *Bunche* v. *Bunche*, 180 Conn. 285, 287–88, 429 A.2d 874 (1980); *Martin* v. *Martin*, 99 Conn. App. 145, 155–56, 913 A.2d 451 (2007); *Richards* v. *Richards*, 78 Conn. App. 734, 739–40, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003). "A motion to open a judgment is governed by General Statutes § 52-212a and Practice Book § 17-4. Section 52-212a provides in relevant part: 'Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . .' Practice Book § 17-4 states

essentially the same rule." *Richards* v. *Richards*, supra, 739–40.

In the present case, the motion to reargue[5] was filed on March 20, 2008, *six days* after the memorandum of decision was filed. Accordingly, it was filed within the four month requirement of § 52-212a. Under those circumstances, the court was vested with the discretion to modify its property division.

"Within four months of the date of the original judgment, Practice Book [§ 17-4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. . . . The exercise of equitable authority is vested in the discretion of the trial court and is subject only to limited review on appeal. . . . We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Internal quotation marks

[5] Although the motion was not titled "motion to open," the defendant did not contest the motion on that ground but simply argued to the court that there was no reason to modify the judgment. It is clear from the substance of the motion and the transcript of the April 14, 2008 hearing that the defendant had notice of the plaintiff's requested relief. Under these circumstances and lacking any claim, much less analysis, of prejudice by the defendant, we will not exalt form over substance. See *Rome* v. *Album*, 73 Conn. App. 103, 111–12, 807 A.2d 1017 (2002) (We must "look to the substance of the claim rather than the form . . . . We do not look to the precise relief requested, but to whether the request apprised the nonmovant of the purpose of the motion. . . . The court did have the authority to treat the defendant's motion to clarify as a motion to open and to grant the defendant's requested relief where the defendant's motion [1] came within the four month period established by § 52-212a; [2] put the plaintiff on notice as to the effect of the relief requested despite the label affixed to the motion . . . [3] sought to correct an error of omission, and [4] the findings contained in [the initial decision] clearly expressed the court's intent as to that property." [Citations omitted; internal quotation marks omitted.]).

omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 94–95, 952 A.2d 1 (2008). In light of the court's finding, upon reconsideration, that the defendant's conduct in causing the irretrievable breakdown of the parties' marriage should be taken into consideration in the division of the equity in the marital home, we cannot say that awarding the plaintiff an additional 10 percent of that equity was an abuse of the court's discretion.

## II

The defendant also claims that the court abused its discretion by awarding the plaintiff relief not claimed by her at trial. Specifically, the defendant argues that a court properly may not award relief postjudgment that is not sought at trial, and "[t]o the extent that the plaintiff failed to enumerate a claim for [60 percent] of the marital equity in her proposed orders, she failed to comply with the requirements of [Practice Book] § 25-30 (c)" and should not be permitted to assert that claim postjudgment. We disagree.

The defendant suggests that a failure to include an express claim for a particular percentage of an asset is a failure to comply with Practice Book § 25-30 (c).[6]

---

[6] Practice Book § 25-30 provides in relevant part: "(b) At least ten days before the scheduled family special masters session, alternative dispute resolution session, or judicial pretrial, the parties shall serve on each appearing party, but not file with the court, written proposed orders, and, at least ten days prior to the date of the final limited contested or contested hearing, the parties shall file with the court and serve on each appearing party written proposed orders.

"(c) The written proposed orders shall be comprehensive and shall set forth the party's requested relief including, where applicable, the following:

"(1) a parenting plan;

"(2) alimony;

"(3) child support;

"(4) property division;

"(5) counsel fees;

"(6) life insurance;

"(7) medical insurance; and

"(8) division of liabilities.

"(d) The proposed orders shall be neither factual nor argumentative but shall, instead, only set forth the party's claims. . . ."

The defendant likens such a failure to a waiver of alimony at trial or a failure to submit a child support guidelines worksheet as required by Practice Book § 25-30 (e).[7] A review of the relevant case law, however, does not support the defendant's claim.

Our Supreme Court has held that "if alimony is not awarded in a *final dissolution decree*, it cannot be awarded in the future based on changed circumstances." (Emphasis added.) *Passamano* v. *Passamano*, supra, 228 Conn. 90 n.7, citing *Ridolfi* v. *Ridolfi*, 178 Conn. 377, 379–80, 423 A.2d 85 (1979). Alimony is solely a creature of statute, and a court has no authority to award it other than at the time of entering a dissolution decree. See General Statutes § 46b-82. It is also true, however, that a trial court may award alimony as part of a marital dissolution even when a party does not seek it and affirmatively waives all claims for alimony. *Porter* v. *Porter*, 61 Conn. App. 791, 797–98, 769 A.2d 725 (2001) ("We have often stated that the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances that arise out of the dissolution of a marriage. . . . The trial court may award alimony to a party even if that party does not seek it and has waived all claims for alimony." [Citations omitted; internal quotation marks omitted.]); *Lord* v. *Lord*, 44 Conn. App. 370, 373–75, 689 A.2d 509 (same), cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998).

When considering claims of improper awards of child support, we have often held that a failure to provide a child support guidelines worksheet as required by

---

[7] Practice Book § 25-30 (e) provides: "Where there is a minor child who requires support, the parties shall file a completed child support and arrearage guidelines worksheet at the time of any court hearing concerning child support; or at the time of a final hearing in an action for dissolution of marriage or civil union, legal separation, annulment, custody or visitation."

Practice Book § 25-30 (e) precludes an appeal by the noncompliant party. See, e.g., *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 337, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009); *Gentile* v. *Carneiro*, 107 Conn. App. 630, 654, 946 A.2d 871 (2008); *Bee* v. *Bee*, 79 Conn. App. 783, 786–87, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003). The basis for this holding is that "the equitable nature of [dissolution] proceedings precludes [noncompliant parties] from later seeking to have the financial orders overturned on the basis that the court had before it too little information as to the value of the assets distributed." *Bornemann* v. *Bornemann*, 245 Conn. 508, 536, 752 A.2d 978 (1998).

In the present case, however, there is no jurisdictional or policy bar to the plaintiff's motion to reargue. The plaintiff did not seek to modify a final judgment outside of the time frame allowed by law but to open a judgment within the four month period permitted by § 52-212a. Accordingly, the court had the discretion to open and to modify the judgment. Moreover, the defendant's assertion that the court's initial order was "consistent with the proposed orders submitted by both parties" is incorrect. The plaintiff requested the opportunity to remain in the marital home for approximately six years prior to an equal distribution of the equity. We do not agree with the defendant that the court's initial orders were consistent with that request.

Furthermore, we see no reason to require that a party to a divorce propose every possible order that he or she would prefer. As our Supreme Court has repeatedly stated, "judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to

observe the parties and the evidence. . . . Moreover, the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." (Citations omitted; internal quotation marks omitted.) *Holley* v. *Holley,* 194 Conn. 25, 29, 478 A.2d 1000 (1984). There was no need for the plaintiff, having timely proposed an order giving her more than a simple 50 percent interest in the house, to set forth in her proposed orders every possible disparate division of the equity in the marital residence for the court to have discretion to grant a postjudgment motion to reargue that was filed in accordance with § 52-212a. Indeed, we do not hold that the plaintiff was required to request more than 50 percent of the marital equity in her proposed orders to permit the court to (1) award such at the time of its initial order or (2) grant her motion to reargue. We never have held that proposed orders serve to limit parties' postjudgment requests for relief or the discretion of the trial court. It is important to note, however, that we do not hold that the court was *obligated* to grant her motion for reargument and the relief requested therein but simply that it was not an abuse of discretion for the court to do so.

The judgment is affirmed.

In this opinion the other judges concurred.