PETER C. KORES *v.* THOMAS L. CALO ET AL.
(AC 31538)

Robinson, Bear and Freedman, Js.

Argued October 18, 2010—officially released February 22, 2011

*Robert F. Cohen*, with whom on the brief, was *Sarah Ann Cohen*, for the appellant (plaintiff).

*David R. Gronbach*, for the appellees (defendants).

*Opinion*

BEAR, J. The plaintiff, Peter C. Kores, appeals from the judgment of the trial court awarding him only nominal damages in his successful action against the defendants, Thomas L. Calo and Gail M. Calo. On appeal, the plaintiff claims that the court improperly (1) concluded

that Kemp Road in Winchester, also known as Calo's Way, was a private road, (2) treated the defendants' motion for articulation and to set aside the verdict as a motion to set aside the judgment, and (3) failed to award him attorney's fees and awarded him only nominal damages. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's claims on appeal. The plaintiff purchased 252 Kemp Road in 1999. The defendants purchased 254 Kemp Road in 2003.[1] The parties' properties were part of the Highland Lake Shores subdivision, which was approved by the town of Winchester in the 1920s, and Kemp Road, located within the subdivision, is a gravel road that is shown on the subdivision map filed with the town and provides the sole access to several abutting lots. The defendants' predecessor in title had purchased Kemp Road at a tax foreclosure sale in 1988[2] and thereafter conveyed the road to the defendants. The deed to the road states that it is "subject to rights of way as of record . . . and by reason of the fact that such roads were laid out as streets on [the subdivision] map." Prior to the defendants' purchasing 254 Kemp Road, the plaintiff and the owners of the two other developed lots on Kemp Road, including the defendants' predecessor in title, shared the expenses of the upkeep of the road, including winter

[1] The defendants apparently received town approval to change the name of Kemp Road to Calo's Way sometime thereafter. For purposes of this opinion, however, we use the historical name of Kemp Road to identify the road in question.

[2] The plaintiff's purchase of 252 Kemp Road occurred approximately eleven years after the defendants' predecessor in title had purchased Kemp Road at the tax foreclosure sale and had received a deed to the road that was filed on the land records. When he purchased 252 Kemp Road, the plaintiff thus had actual or constructive notice that the town considered Kemp Road to be private, i.e., not dedicated to the town and not accepted by the town or by the action of the public. Also, between 1999 and 2003, the plaintiff contributed to the cost of keeping the road clear in the winter months and other road maintenance.

plowing. The town did not plow or otherwise maintain Kemp Road, but the court found that the town most likely installed a catch basin therein in the 1960s or 1970s.

After the defendants purchased 254 Kemp Road, problems between them and the plaintiff began to develop. Thomas Calo discharged the snowplow operator the neighbors had been using and informed him that he would be trespassing if he again attempted to plow the road. He also objected to the plaintiff's attempt to create an additional driveway on the plaintiff's property on the alleged ground that it would involve disturbing the road, to which the defendants claimed ownership, and he prevented the plaintiff's contractor from cutting the additional driveway. The police were called numerous times by each of the parties. Thomas Calo asserted that the plaintiff drove recklessly and that he caused damage to the road. The plaintiff asserted that the road was deteriorating because the defendants failed to maintain it properly. The plaintiff testified that Thomas Calo, in the winter months, also blocked access to one end of the road by parking a vehicle in the middle of it and by piling snow there as well. There was photographic evidence admitted to support this allegation. The plaintiff also complained that Thomas Calo, who is a state police trooper, frightened a visitor to the plaintiff's home by shining a light into the visitor's car and telling the visitor that she was not allowed to park on the road. The plaintiff also testified that two of his older daughters moved from the family home because of the stress of the situation between the plaintiff and the defendants and that Thomas Calo intimidated and yelled at the plaintiff's wife, whom the plaintiff described as a sixty-two year old woman who was five feet, two inches tall, weighing 115 pounds.

The defendants also did not want the plaintiff parking his vehicles on the road in front of his home at 252

Kemp Road, and they stated that they believed that the plaintiff was trespassing by so doing. In an attempt to stop the plaintiff from parking there, Thomas Calo parked a large camper in front of the plaintiff's home, blocking the view from the plaintiff's front windows, covered it with a blue tarp and left it there for approximately two years. The plaintiff testified that in an attempt to put an end to the situation, he asked the defendants, through a letter to the defendants' attorney, to move the camper so that he could sell his home but that the defendants refused. The plaintiff also testified that because of the camper being parked directly in front of his home, he was not able to sell his home at the height of the real estate market. He testified that he had a long-standing background in real estate, having previously held a real estate license and a broker's license, and that he had spoken with some real estate agents in mid-2006 and that his home was worth between $350,000 and $375,000 at that time, but that the agents opined that his property was not saleable because of the camper. He also testified that one year later, the housing market crashed and that his property then and at the time of trial was worth only between $250,000 and $275,000.

The plaintiff brought the present action, claiming in count one that he had an easement of necessity over the road and that the defendants repeatedly interfered with or obstructed his use of that easement and, in count two, that the actions of the defendants amounted to a nuisance. The plaintiff sought a determination of the rights of the parties to the road pursuant to General Statutes §§ 47-31 (f) and 52-29, an order enjoining the defendants from obstructing or otherwise interfering with the plaintiff's use of the easement, monetary damages, costs and any other relief that the court would consider just. After a trial to the court, in its August 20, 2008 memorandum of decision, the court found as

to count one that (1) the defendants owned the road subject to the plaintiff's easement, (2) the plaintiff had a right to park his vehicle on the road in front of his home as long as it did not interfere with the passage of vehicles, (3) the plaintiff had a right to construct another driveway as long as he repaired any damage to the road caused by such construction and (4) the defendants' interference with these actions had violated the plaintiff's easement rights. As to count two, the court found that the defendants' parking of the camper in front of the plaintiff's home for nearly two years amounted to a private nuisance and that this prevented the plaintiff from selling his home. The court also found, however, that the nuisance was temporary. The court enjoined the defendants from interfering with the plaintiff's easement rights and awarded $27,000 in money damages to the plaintiff.

On August 28, 2008, the defendants filed a motion for a new trial,[3] and, on November 14, 2008, a motion for articulation and to set aside the verdict. In their November 14, 2008 motion, the defendants asked the court to articulate the basis of its $27,000 monetary award and to vacate that award on the ground that the plaintiff had failed to prove with certainty any damages. The court conducted a hearing on the motion,[4] and, in an August 27, 2009 memorandum of decision, stated that it was considering the defendants' November 14, 2008 motion to be a motion to set aside the judgment pursuant to Practice Book § 17-4 and that the motion was timely filed pursuant to General Statutes § 52-212a. It then stated that it had "mistakenly awarded the entire amount of attorney's fees incurred by the plaintiff as

---

[3] In its August 27, 2009 memorandum of decision, the court stated that it had denied the defendants' motion for a new trial orally.

[4] The record does not provide the dates of the hearing, but the defendants state in their appellate brief that the hearing lasted three days, occurring on November 17, 2008, and January 8 and February 19, 2009.

compensation for his losses." The court stated that it could not differentiate between the attorney's fees "incurred to have the nuisance removed and [those incurred] to have the defendant[s] enjoined from interfering with the plaintiff's easement rights . . . ." The court, therefore, vacated its damages award and awarded $100 in nominal damages in its place. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

On appeal, the plaintiff does not challenge the findings of the court but, instead, challenges the court's legal conclusion that Kemp Road was a private road and not a public road. He argues that the court's finding that the road was and is used seasonally by the general public as a major access to the beach is sufficient to satisfy the public acceptance element of the public road test. He also argues that the evidence demonstrated that the town exercised dominion and control over the road by installing a catch basin or storm drain and sanitary sewers on Kemp Road.[5] Accordingly, he argues, the court's conclusion that the road was private was flawed. The defendants argue that the plaintiff was "required to prove that the original owner of the road intended to 'dedicate' the road to public use and that the town 'accepted' the dedication." They argue that the court correctly determined that, although there may have been an "attempted" dedication, there was no actual dedication nor was there an acceptance by the town. Because the plaintiff has not provided a record that is adequate for our review, we decline to review his claim.

The following additional facts are relevant to our analysis. The court specifically found that "[a]lthough

---

[5] Although there was testimony that sanitary sewers and water lines had been installed along Kemp Road and that the town billed the residents for these services, the court made no findings related to these matters.

the court is persuaded by the evidence that . . . Kemp Road has been used seasonally by the general public as a major access to the beach and that the municipality installed a storm drain in the road in the 1960s or early 1970s, the plaintiff failed to satisfy his burden of proving that the road is or was owned by the town." The court also found that there was "no question that [a] subdivision map [had been] filed [by the original owners]. Thus, *there appears to have been at least an attempted dedication* [of the road]. . . . The evidence [however] is insufficient for the court to find that there was an acceptance of the road by the town. The installation of the storm drain . . . and the seasonal public use of the road does not prove an acceptance of the road where the other factors to be considered, i.e., the fact that the road remained a 'paper road,'[6] unpaved and not maintained by the town, and the tax collector's taking of the road as a result of nonpayment of taxes by the then owner supports the conclusion that there was no acceptance."[7] (Citation omitted; emphasis added.) Accordingly, the court found that the road had not been accepted by the town or by the actions of the public and, therefore, that it was a private road, owned by the defendants, but that the plaintiff had an easement over the road.

---

[6] Black's Law Dictionary (8th Ed. 2004) defines paper street or road as "[a] thoroughfare that appears on plats, subdivision maps, and other publicly filed documents, but that has not been completed or opened for public use." But see *Simone* v. *Miller*, 91 Conn. App. 98, 101 n.1, 881 A.2d 397 (2005), citing *Burke* v. *Ruggerio*, 24 Conn. App. 700, 707, 591 A.2d 453 (describing paper street as one never paved, not developed as public road, not used by abutting owners for access, no formal dedication for use as highway and no formal or informal acceptance by town), cert. denied, 220 Conn. 903, 593 A.2d 967 (1991), and *Meder* v. *Milford*, 190 Conn. 72, 73, 458 A.2d 1158 (1983).

[7] Although the plaintiff contends in his brief to this court that the road had been "off the tax roll for [fifty] years" before the town sought to collect taxes on it, he does not point to any evidence in support of this contention, and the court made no findings as to whether taxes had been levied or paid for the road prior to 1973.

"From early times, under the common law, highways have been established in this state by dedication and acceptance by the public. . . . The essential elements to be proved are the owner's unequivocal intention to dedicate the way to public use, and a general use by the public over a period long enough to indicate that it is acting on the basis of a claimed public right resulting from the owner's dedication. . . . Since both of these issues are questions of fact . . . our function is limited to determining whether the decision of the trial court was clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Ventres* v. *Farmington*, 192 Conn. 663, 666–67, 473 A.2d 1216 (1984).

"Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public. . . . Both the owner's intention to dedicate the way to public use and acceptance by the public must exist, but the intention to dedicate the way to public use may be implied from the acts and conduct of the owner, and public acceptance may be shown by proof of the actual use of the way by the public. . . . Thus, two elements are essential to a valid dedication: (1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public. . . . No particular formality is required in order to dedicate a parcel of land to a public use; dedication may be express or implied. . . . Whether there has been a dedication and whether there has been an acceptance present questions of fact." (Citations omitted; internal quotation marks omitted.) *Meshberg* v. *Bridgeport City Trust Co.*, 180 Conn. 274, 279, 429 A.2d 865 (1980).

In this case, the plaintiff initially argues that "[t]here is a presumption of dedication [of Kemp Road] to public use from the filing of the [original subdivision] map [with the town] absent a manifest intent [of the owner]

to keep [it] private." The defendants argue that the court never found that the road actually had been dedicated to public use but, rather, found that the original owner had continued to own the road until the town took possession of it for nonpayment of taxes.

On the issue of dedication, the court specifically found that there was "no question that the subdivision map was filed. Thus, *there appears to have been at least an attempted dedication.*" (Emphasis added.) The court then proceeded to determine that the evidence was insufficient for a finding that there had been an acceptance of the road. It made no further findings or conclusions regarding the owner's intent to dedicate the road for use by the public.

To prove that Kemp Road is a public road, the plaintiff was required to prove that the original owner manifested an unequivocal intent to dedicate the road to public use and that the town or the public accepted the dedication. *Ventres* v. *Farmington,* supra, 192 Conn. 666–67; *Meshberg* v. *Bridgeport City Trust Co.,* supra, 180 Conn. 279. Both of these elements are factual determinations, which must be made by the trial court. Id. Here, on the issue of the owner's unequivocal intent to dedicate the road, the court found only that there "appears" to have been an "attempted" dedication. The plaintiff does not challenge this finding, nor did he ask the court to clarify or to articulate whether, in fact, it did find that the owner of the road had demonstrated an unequivocal intent to dedicate the road to public use. The court's statement that there "appears to have been at least an attempted dedication" does not amount to a finding that there, in fact, was a *clear manifestation of unequivocal intent* to dedicate Kemp Road to public use. Because it is unclear exactly what the court meant by this statement, we are unable to review the plaintiff's claim without resorting to speculation. In summary, the court's finding is unclear, and, because there was no

motion for articulation, the record provided by the plaintiff is inadequate for our review.

## II

The plaintiff next claims that the court erred in treating the defendants' November 14, 2008 motion as a motion to set aside the judgment. He also argues that the defendants' failure to pay a filing fee with the submission of the motion is jurisdictional. He did not raise this issue at trial and does not explain whether his claim involves subject matter jurisdiction or personal jurisdiction, nor does he provide any analysis of his jurisdictional claim. Nevertheless, because a question of subject matter jurisdiction must be decided once raised; see *Trumbull* v. *Palmer*, 123 Conn. App. 244, 250, 1 A.3d 1121, cert. denied, 299 Conn. 907, 10 A.3d 526 (2010); we will review the jurisdictional claim only insofar as the court's subject matter jurisdiction is concerned. See *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 740, 6 A.3d 1168 (2010) ("[p]ersonal jurisdiction is not like subject matter jurisdiction, which can be raised at any time" [internal quotation marks omitted]). After reviewing the record, we conclude that the court had subject matter jurisdiction despite the defendants' failure to pay a filing fee and that it acted within its discretion in considering the defendants' motion.

The following additional facts are relevant to our resolution of the plaintiff's claim. After the court issued its August 20, 2008 memorandum of decision awarding the plaintiff "money damages in the amount of $27,000," the defendants, on November 14, 2008, filed a motion for articulation and to set aside the verdict. The defendants asked the court to articulate the basis for the $27,000 monetary award and to vacate the award on the ground that the plaintiff had failed to prove any damages with reasonable certainty. Following a hearing on the

motion, the court, on August 27, 2009, issued a memorandum of decision in which it stated that, because there was not a "verdict" in this court trial, it was treating the defendants' motion as a motion to set aside the judgment pursuant to Practice Book § 17-4 and that the motion was timely filed pursuant to General Statutes § 52-212a. The plaintiff claims that the court did not have the authority to do this, especially when the defendants did not pay the required filing fee for a motion to set aside the judgment. See Practice Book § 17-4 (b) ("[u]pon the filing of a motion to open or set aside a civil judgment, except a judgment in a small claims or juvenile matter, the moving party shall pay to the clerk the filing fee prescribed by statute unless such fee has been waived by the judicial authority"); see also General Statutes (Rev. to 2007) § 52-259c (a).[8] We are not persuaded.

Before turning to the merits of the plaintiff's claim, we note the settled principles that guide our review of the jurisdictional question. "[A] determination regarding a trial court's subject matter jurisdiction is a question of law, [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 314, 968 A.2d 396 (2009).

In *Plasil* v. *Tableman*, 223 Conn. 68, 79–80, 612 A.2d 763 (1992), our Supreme Court determined that the trial court in that case had not been "deprived of subject matter jurisdiction by the [movant's] failure to pay an

---

[8] General Statutes (Rev. to 2007) § 52-259c (a) provides: "There shall be paid to the clerk of the Superior Court upon the filing of any motion to open, set aside, modify or extend any civil judgment rendered in Superior Court a fee of thirty-five dollars for any housing matter, a fee of twenty-five dollars for any small claims matter and a fee of seventy-five dollars for any other matter, except no fee shall be paid upon the filing of any motion to open, set aside, modify or extend judgments in juvenile matters or orders issued pursuant to section 46b-15 or upon the filing of any motion pursuant to subsection (b) of section 46b-63. Such fee may be waived by the court."

entry fee with the re-served process . . . ." The court explained: "Assuming that the trial court clerk had a statutory duty to collect the entry fee pursuant to § 52-259 (a), we conclude, as did the trial court, that the plaintiff should not be penalized for the clerk's inaction, and that the clerk's inaction did not deprive the trial court of subject matter jurisdiction." Id., 76. The court also explained: "The clerks of the court are merely recording officers; and if they make a mistake, the court may amend it. Their function is merely ministerial." (Internal quotation marks omitted.) Id., 77. We also point out that Practice Book § 17-4 (b) and § 52-259c (a) of our General Statutes permit a court to waive the filing fee.

We are mindful that when a clerk returns a pleading for nonpayment of the filing fee, the movant must resubmit the pleading and pay the filing fee in a timely manner to avoid possible dismissal. In this case, however, the clerk did not return the motion, and the court did not order payment of the fee. Accordingly, we conclude that the defendants' failure to pay a filing fee did not deprive the court of subject matter jurisdiction.

The plaintiff also claims that the court did not have the authority to treat the defendants' motion as a motion to set aside the judgment. We do not agree.

"[A] civil judgment of the Superior Court may be opened if a motion to open or set aside is filed within four months of the issuance of a judgment. . . . A motion to open a judgment is governed by General Statutes § 52-212a and Practice Book § 17-4. Section 52-212a provides in relevant part: Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which

it was rendered or passed. . . . Practice Book § 17-4 states essentially the same rule." (Citations omitted; internal quotation marks omitted.) *Fitzsimons* v. *Fitzsimons*, 116 Conn. App. 449, 454–55, 975 A.2d 729 (2009). "It is familiar law that a court has the inherent authority to open, correct or modify its judgments. . . . The provisions of § 52-212a do not operate to strip the court of its jurisdiction over its judgments, but merely operate to limit the time period in which a court may exercise its substantive authority to adjudicate the merits of a case." (Citations omitted.) *Bridgeport* v. *Triple 9 of Broad Street, Inc.*, 87 Conn. App. 735, 744, 867 A.2d 851 (2005).

In *Fitzsimons* v. *Fitzsimons*, supra, 116 Conn. App. 455 n.5, the court explained that the plaintiff in that case had not titled his motion as a motion to open or vacate the judgment. Nevertheless, the court stated that it was clear from the substance of the motion that "the defendant had notice of the plaintiff's requested relief." Id. The court then concluded: "Under these circumstances and lacking any claim, much less analysis, of prejudice by the defendant, we will not exalt form over substance." Id., citing *Rome* v. *Album*, 73 Conn. App. 103, 111–12, 807 A.2d 1017 (2002) ("We must look to the substance of the claim rather than the form. . . . We do not look to the precise relief requested, but to whether the request apprised the nonmovant of the purpose of the motion." [Internal quotation marks omitted.]).

Given the plain language of the relief requested by the defendants in their postjudgment motion, there can be no question that the plaintiff had notice of what the defendants were seeking. Additionally, in light of the trial court's continuing jurisdiction over its judgments and its authority to act substantively to set aside a judgment within four months of its rendition, we conclude that the court in this case had the authority to

treat the defendants' postjudgment motion as a motion to set aside the court's judgment.

## III

The plaintiff next claims that the court erred in not awarding attorney's fees to him. He also claims that the court improperly awarded him only nominal damages on his nuisance claim. He argues that the findings of the court regarding the lack of specificity in the attorneys' bills was clearly erroneous and that the court committed error when it reconsidered its original $27,000 award and changed it to an award of $100 in nominal damages. Although the arguments set forth by the plaintiff in his appellate brief and at oral argument before this court, in combination with our own review of the record, are superficially attractive, we are unable to review the plaintiff's claim adequately because he has not provided us with the transcripts of the hearing on the defendants' motion to set aside the judgment, which led the court to vacate the original damages award.

The following additional facts are relevant to our conclusion that the claim is not reviewable. After the defendants filed their November 14, 2008 motion, the court held a hearing on the motion and the plaintiff's opposition thereto.[9] On August 27, 2009, the court issued a memorandum of decision. The court explained that it had mistakenly awarded the plaintiff "the entire amount of attorney's fees incurred . . . as compensation for his losses."[10] It also explained that it had intended to award to the plaintiff, as the full measure of damages, only the fees he incurred in prosecuting

[9] See footnote 4 of this opinion.

[10] The bills submitted to the court in support of the plaintiff's claim for attorney's fees totaled $36,525, not $27,000. Attorney Robert F. Cohen's bill totaled $30,000; attorney Michael J. Auger's bill totaled $6525. Additionally, neither bill included the time spent at trial, which, obviously, still was continuing.

his nuisance claim, but that it could not differentiate those fees from the fees incurred to define the rights of parties and to enjoin the defendants from interfering with his easement rights. Because it could not differentiate the fees, it decided that the plaintiff had not proven his damages sufficiently, and it vacated the damages award, replacing it with an award of $100 in nominal damages. The court did not mention any other damages or losses in connection with the plaintiff's claims.

On appeal, the plaintiff claims that the court improperly vacated the damages award and that it easily could have differentiated the fees incurred in the nuisance claim from the other fees. He also argues that it was "illogical and inconsistent" for the court to have found that the defendants had created a nuisance but then to have awarded no damages to him on that count except for $100.[11] Although the plaintiff's arguments are superficially attractive, without a transcript detailing what

---

[11] Our review of the record reveals that there was some evidence of damages other than the attorney's fees incurred. The plaintiff testified that he was unable to sell his home because Thomas Calo intentionally had parked his tarp-covered camper directly in front of it, which testimony the court specifically credited, stating: "The evidence supports [the plaintiff's] claim that [Thomas] Calo's parking the camper in front of [the plaintiff's] home for two years amounts to a private nuisance. His doing so prevented [the plaintiff] from selling his home. . . . His conduct was intentional."

The plaintiff also testified that his property value had decreased from between $350,000 and $375,000 before Thomas Calo parked the camper in front of it, to being worth only between $250,000 and $275,000 after the camper was moved because the housing market had slowed down. The record also contains a December, 2003 bill from Torrington Diesel Corporation, in the amount of $1033, for time, labor and materials to begin construction on the plaintiff's new driveway, which construction Thomas Calo would not allow to continue at the time. The plaintiff also testified as to how this situation had affected his family, including his wife and his children and his relationship with them. We do not know, however, what weight the court gave this testimony.

"Once a nuisance is established under substantive law, damages are similar to those in many trespass cases. . . . Where the nuisance . . . is not permanent and has been or can be abated, damages are usually measured differently. The plaintiff usually recovers the depreciation in the rental or use value of his property during the period in which the nuisance exists,

occurred during the alleged three day hearing on the defendants' November 14, 2008 motion, we are left to speculate about what was presented to the court both in support of and in opposition to the defendants' motion. We, therefore, are unable to review the plaintiff's claim. By way of example, we cannot determine or assess what was argued by each party to the court, whether the plaintiff conceded that he sought only attorney's fees as damages, whether he agreed that the fees could not be differentiated, and what additional evidence, if any, was presented to the court at the hearing. Additionally, there is nothing in the record that explains the court's failure to mention any other possible damages in its August 27, 2009 decision, and, in the absence of the transcripts, we are unable to determine the court's reasons for this omission.

---

plus any special damages. Rental value and use value are not necessarily the same thing, and some courts allow a plaintiff who actually occupies the premises to recover the 'use value,' or special value to him, but limit the recovery of the owner who does not occupy the premises to the more objective measure of rental value. Discomfort or inconvenience in the use of the property is, of course, relevant both to establish special damage and as evidence bearing on the loss of rental or use value." (Internal quotation marks omitted.) W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 89, pp. 637–39. Special damages have been interpreted as discomfort or inconvenience in the use of the property, the cost to repair or to restore the property, and for illness caused by the temporary nuisance. See id., p. 639; see also *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 41, 404 A.2d 889 (1978) ("in a nuisance case, the [trier of fact] may properly consider discomfort and annoyance").

As we stated in *Kinsale, LLC* v. *Tombari*, 95 Conn. App. 472, 476 n.4, 897 A.2d 646 (2006), however, "[in] traditional nuisance law . . . whether a nuisance is temporary or permanent is a question of fact and . . . in making that determination, a fact finder may look at the permanent nature of the damages in assessing whether damages are of a permanent or temporary nature. Thus, the fact that the objects placed and erected by the defendants to annoy and to deter the plaintiffs could have been removed is not dispositive of the question of the temporary or permanent nature of the plaintiffs' damages. Rather, if a nuisance, albeit one that could be removed, causes a reduction in the sales price of a property burdened by the nuisance, the damages realized by the seller may be viewed as permanent. See *Herbert* v. *Smyth*, 155 Conn. 78, 230 A.2d 235 (1967)."

In summary, although we recognize that the plaintiff's alleged circumstances might have entitled him to additional relief from the trial court, we cannot bridge the gaps in the record by resorting to speculation about the bases for the court's rulings in this case. See, e.g., *Crelan* v. *Crelan*, 124 Conn. App. 567, 571–72, 5 A.3d 572 (2010); *State* v. *Dawes*, 122 Conn. App. 303, 320 n.2, 999 A.2d 794, cert. denied, 298 Conn. 912, 4 A.3d 834 (2010); *Resurreccion* v. *Normandy Heights, LLC*, 76 Conn. App. 642, 649, 820 A.2d 1116, cert. denied, 264 Conn. 917, 826 A.2d 1159 (2003). Accordingly, the plaintiff's claim that the court improperly failed to award him attorney's fees and awarded him only nominal damages is not reviewable.

The judgment is affirmed.

In this opinion the other judges concurred.