******************************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TLOA OF CT, LLC *v.* MARCELINO TAIPE ET AL.
## (AC 45844)

Alvord, Prescott and Clark, Js.

*Syllabus*

The plaintiff assignee of a municipal tax lien on certain real property in the city of Bridgeport owned by the defendant sought to foreclose the lien. At the time the defendant purchased the property in January, 2016, there were unpaid taxes assessed on the property from 2015. In April, 2017, the city filed the certificate of lien on the land records for the 2015 taxes owed on the property and subsequently assigned the tax lien to the plaintiff's predecessor in interest, which assigned the lien to the plaintiff. The defendant paid his property taxes as he received bills from the city. The first property tax bill he received was sent by the city to the defendant in July, 2017, at which time the city had already recorded and assigned to the plaintiff's predecessor in interest the tax lien, which remained due and owing on the property. The defendant never made any payments to the plaintiff in connection with the assigned lien. In May, 2020, the plaintiff commenced this action seeking to foreclose on the tax lien. In his answer, the defendant asserted that, under the applicable statute (§ 12-144b), the city was required to apply the amounts that he had paid from 2017 to 2020 first to the oldest outstanding taxes owed on the property, which he claimed were the taxes owed on the 2015 tax lien, by transferring those amounts to the plaintiff before applying any such amounts to the taxes that were due and owing to the city. The parties each filed a motion for summary judgment. The trial court granted the plaintiff's motion for summary judgment as to liability only and denied the defendant's motion for summary judgment, concluding that the plaintiff had established its prima facie case for foreclosure of a tax lien and that the defendant's asserted special defense of setoff was not viable. On the defendant's appeal to this court from the trial court's judgment of foreclosure by sale, *held* that the trial court properly granted the plaintiff's motion for summary judgment and denied the defendant's motion for summary judgment: contrary to the defendant's argument, the tax lien in question, once assigned, was no longer a debt owed to the city and, under such circumstances, the city had no legal obligation to forward to the plaintiff any tax payments that it received from the defendant, as § 12-144b makes no reference to third-party assignees of tax liens, and, had the legislature intended to require municipalities to do so, it easily could have accomplished that goal by using language making it clear that municipalities must transfer payments they receive or recover to third-party holders of previously assigned tax liens; moreover, when § 12-144b is viewed in relation to the statute concerning third-party assignees (§ 12-195h), and in the absence of any language whatsoever within § 12-144b referencing third-party holders of assigned tax liens, it cannot reasonably be inferred, solely from the language in § 12-144b requiring municipalities to "apply" tax payments that they receive or recover to "outstanding secured taxes," that the legislature intended to require municipalities to act, in effect, as loan servicers for third-party holders of municipal tax liens.

Argued May 9—officially released July 25, 2023

*Procedural History*

Action to foreclose a tax lien on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Spader, J.*, granted the plaintiff's motion for summary judgment as to liability only and denied the named defendant's motion for summary judgment; thereafter, the court, *Cirello, J.*, ren-

dered a judgment of foreclosure by sale, from which the named defendant appealed to this court. *Affirmed.*

*Thomas L. Kanasky, Jr.*, for the appellant (named defendant).

*Gary J. Greene*, with whom, on the brief, was *Sean V. Patel*, for the appellee (plaintiff).

*Opinion*

CLARK, J. In this foreclosure action, the defendant Marcelino Taipe[1] appeals from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, TLOA of CT, LLC. On appeal, the defendant claims that the court erred in granting the plaintiff's motion for summary judgment as to liability only and denying his motion for summary judgment. In particular, the defendant contends that the court improperly concluded that the city of Bridgeport (city) complied with General Statutes § 12-144b when it applied the defendant's tax payments to his current taxes owed to the city, rather than to the tax lien at issue in this appeal, which the city had already assigned to the plaintiff's predecessor in interest prior to receiving the payments at issue. We affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of this appeal. On January 21, 2016, the defendant purchased the property located at 85 Gem Avenue in Bridgeport (property). At the time of the purchase, there were unpaid taxes assessed on the property from 2015. The court found that the city likely sent the 2015 tax bill to one of the previous owners of the property and that the defendant likely never received a 2015 tax bill from the city.

On April 5, 2017, the city filed a certificate of lien on the land records for the 2015 taxes owed on the property (tax lien). The city subsequently assigned the tax lien to TLOA Acquisitions, LLC-Series 2 on May 17, 2017, and recorded the assignment on May 18, 2017. TLOA Acquisitions, LLC-Series 2 thereafter assigned the tax lien to the plaintiff on October 27, 2017. That assignment was recorded on the city's land records on December 11, 2017.

The defendant, after purchasing the property, paid his property taxes as he received bills from the city. The first property tax bill he received, which was for the 2016 grand list, was sent by the city to the defendant in July, 2017. As a result, by the time the defendant received his first tax bill in July, 2017, the city had already recorded and assigned to the plaintiff's predecessor in interest the tax lien, which remained due and owing on the property. The defendant has not made any payments to the plaintiff in connection with the assigned lien.

On May 13, 2020, the plaintiff commenced this action seeking to foreclose on the tax lien. On November 18, 2021, the defendant filed his answer and a special defense. The defendant asserted that he was entitled to a right of setoff pursuant to General Statutes § 52-139 for municipal real estate tax payments that he made to the city from 2017 to 2020.[2] Specifically, he argued that § 12-144b required the city to apply the amounts that he had paid for those tax years first to the oldest

outstanding taxes owed on the property, which he claimed were the taxes owed on the tax lien. Even though the city had already assigned the tax lien to the plaintiff by the time the defendant made those payments, the defendant nonetheless claimed that § 12-144b required the city to "apply" his payments to the taxes owed under that lien by transferring those amounts to the plaintiff before applying any such amounts to the taxes that were due and owing to the city.

On December 2, 2021, the plaintiff filed a motion for summary judgment as to liability. On January 7, 2022, the defendant filed an opposition to the plaintiff's motion for summary judgment and his own motion for summary judgment. In his motion for summary judgment, the defendant claimed that he was "entitled to summary judgment on his special defense of setoff for subsequent tax payments made to the [city's] tax collector, which should have been applied to and paid off the tax lien being foreclosed by the plaintiff" in accordance with § 12-144b.

On May 11, 2022, the court, *Spader*, *J.*, granted the plaintiff's motion for summary judgment as to liability only and denied the defendant's motion for summary judgment. The court concluded that the plaintiff had established its prima facie case for foreclosure of a tax lien and that neither of the defendant's asserted special defenses were viable. The court also denied the defendant's motion for summary judgment, stating that, although it "disagree[d] that payments ha[d] been misapplied by the city . . . the only way those payments could cause a setoff herein is if there was an overpayment being held by the city that should resolve this debt." (Emphasis omitted.) Having concluded that the defendant's special defense of setoff failed as a matter of law, and that no genuine issue of material fact existed with respect to the defendant's liability on the assigned tax lien, the court granted the plaintiff's motion for summary judgment as to liability only and denied the defendant's motion for summary judgment.

On May 13, 2022, the plaintiff filed a motion for judgment of strict foreclosure. On September 7, 2022, the court, *Cirello*, *J.*, rendered a judgment of foreclosure by sale and set the sale date for December 10, 2022.[3] The defendant timely appealed. Additional facts and procedural history will be set forth as necessary.

On appeal, the defendant claims that the court "erred in denying the defendant's motion for summary judgment on his claim of setoff in holding that" § 12-144b does not apply "to assigned tax liens." Although the defendant labeled his defense before the trial court as one of setoff, the substance of the allegations in his special defense sound in a defense of payment.[4] In asserting that the city misapplied his tax payments, the defendant argues that the payments he made to the city

should have been applied to the tax lien held by the plaintiff, extinguishing it, and thereby precluding this foreclosure action. In disposing of the defendant's argument, the court determined that the city had properly applied his tax payments. On appeal, the defendant claims that the court misconstrued and misapplied § 12-144b.

The plaintiff contends in its appellee brief that the issue of payment was not properly presented to the trial court and preserved for appeal and that this court should therefore limit its analysis to whether the court properly concluded that there was no genuine issue of material fact with respect to the defendant's special defense of setoff. We conclude that the arguments the defendant asserts on appeal were sufficiently raised and addressed below and that limiting our review strictly to the defense of setoff would be to exalt form over substance.[5] See *Fitzsimons* v. *Fitzsimons*, 116 Conn. App. 449, 455 n.5, 975 A.2d 729 (2009) ("[u]nder these circumstances and lacking any claim, much less analysis, of prejudice by the [plaintiff], we will not exalt form over substance"). Nevertheless, for the reasons that follow, we conclude that the court properly granted the plaintiff's motion for summary judgment and denied the defendant's motion for summary judgment.

We begin by setting forth our standard of review. "The scope of our review of the trial court's decision to grant [a] motion for summary judgment is plenary. . . . Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) *Shoreline Shellfish, LLC* v. *Branford*, 336 Conn. 403, 410, 246 A.3d 470 (2020).

Because the defendant's claim on appeal rests, in part, on the meaning and application of § 12-144b, a question of statutory interpretation is also presented. "When we are called upon to construe a statute that is implicated by a summary judgment motion, our review is plenary." *Doe* v. *West Hartford*, 328 Conn. 172, 181, 177 A.3d 1128 (2018). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to

determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Cerame* v. *Lamont*, 346 Conn. 422, 426, 291 A.3d 601 (2023). "Importantly, ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation. . . . In other words, statutory language does not become ambiguous merely because the parties contend for different meanings." (Internal quotation marks omitted.) *Connecticut Housing Finance Authority* v. *Alfaro*, 328 Conn. 134, 142, 176 A.3d 1146 (2018).

We now turn to the merits of the defendant's claim on appeal. Our rules of practice clearly delineate what a plaintiff must prove when seeking to foreclose on a municipal tax lien. Practice Book § 10-70 (a) provides: "In any action to foreclose a municipal tax or assessment lien the plaintiff need only allege and prove: (1) the ownership of the liened premises on the date when the same went into the tax list, or when said assessment was made; (2) that thereafter a tax in the amount specified in the list, or such assessment in the amount made, was duly and properly assessed upon the property and became due and payable; (3) (to be used only in cases where the lien has been continued by certificate) that thereafter a certificate of lien for the amount thereof was duly and properly filed and recorded in the land records of the said town on the date stated; (4) *that no part of the same has been paid*; and (5) other encumbrances as required by the preceding section." (Emphasis added).

The defendant argues that the plaintiff was not entitled to summary judgment because, in his view, even though the city already had assigned the tax lien to a third-party assignee prior to the time he made any tax payments to the city, § 12-144b required the city to transfer his payments to the plaintiff, as the successor to the original assignee, in satisfaction of his obligations under the lien before applying any amounts to taxes owed to the city for subsequent tax years. The defendant notes that § 12-144b requires a municipality to apply all tax payments first to any "outstanding unsecured taxes . . . paying the oldest such tax first," and then to any "outstanding secured taxes . . . paying the oldest such tax first." The defendant contends that, because General Statutes § 12-172[6] creates a statutory lien over all municipal taxes owed for real property from the date of assessment, and there was no evidence that he owed personal property taxes, there were no "unsecured taxes" owed on the property at the time of his payments. He further contends that, because the 2015 tax was the oldest secured tax owed on the prop-

erty when he made his payments and § 12-144b required the city to "apply" his tax payments first to the oldest outstanding secured tax, the city was required to apply his payments to the previously assigned tax lien before applying those amounts to real property taxes that he owed to the city for subsequent tax years by transferring to the plaintiff the amount owed on the tax lien.

The plaintiff counters that § 12-144b imposes no obligation on a municipality to transfer tax payments to a holder of an assigned tax lien before applying such payments to taxes that are due and owing to a municipality. The plaintiff also argues that the defendant's claim rests upon an incorrect construction of § 12-144b. Specifically, the plaintiff argues that the taxes that were due and owing to the city at the time the defendant made his payments constituted "unsecured taxes" and that § 12-144b required the city to apply those payments to such amounts before applying any amounts to "secured taxes," which it contends are limited to those taxes for which a lien has been recorded on the land records.

We need not decide whether, as the defendant contends, all real property taxes are "secured taxes" for purposes of § 12-144b or, instead, as the plaintiff contends, real property taxes are "secured taxes" for purposes of that statute only if a lien for such amount is recorded on the land records, because we agree with the plaintiff that the tax lien in question, once assigned, was no longer a debt owed to the city and that, under such circumstances, the city had no legal obligation to forward to the plaintiff any tax payments that it received from the defendant.

We begin with the language of § 12-144b. That statute provides in relevant part that, "[e]xcept as otherwise provided by the general statutes, all payments made to or recovered by the municipality shall be applied (1) first, for any outstanding unsecured taxes, to expenses concerning such unsecured taxes, including attorney's fees, collection expenses, collector's fees and other expenses and charges related to all delinquencies owed by the party liable therefor before the interest accrued, then to the principal of such outstanding unsecured taxes, paying the oldest such tax first, and (2) for any outstanding secured taxes, first to expenses concerning such secured taxes, including attorney's fees, collection expenses, collector's fees and other expenses and charges related to all delinquencies owed by the party liable therefor before the interest accrued, then to the principal of such outstanding secured taxes, paying the oldest such tax first. . . ." General Statutes § 12-144b.

On the basis of the clear language of the statute, when a municipality receives or recovers a tax payment, it must first apply such payments to "outstanding unsecured taxes," beginning with the oldest such tax. Once a municipality has applied such payments to any out-

standing unsecured taxes and fees associated with those taxes, in the order set out in the statute, a municipality must then apply payments to any outstanding secured taxes, beginning with the oldest such tax, again following the order set out in the statute.

The defendant contends that § 12-144b imposes upon a municipality an obligation to "apply" tax payments it receives or recovers to a tax lien that a municipality previously assigned to a third party by transferring such amounts to the current holder of the tax lien. Section 12-144b, however, makes no reference to third-party assignees of tax liens. Had the legislature intended to require municipalities to undertake the burdensome and administratively difficult responsibilities that the defendant's interpretation would create,[7] it easily could have accomplished that goal by using language making it clear that municipalities must transfer payments they receive or recover to third-party holders of previously assigned tax liens. See *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183 ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly"), cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). Indeed, the legislature has demonstrated that it is more than capable of using language directly addressing such liens. General Statutes § 12-195h broadly regulates the manner in which municipalities may assign tax liens, enumerates the rights, powers and duties of third-party assignees seeking to enforce or foreclose upon municipal tax liens, and establishes extensive notice requirements governing collection efforts by third-party assignees. See, e.g., General Statutes § 12-195h (d) and (e)[8]; see also *American Tax Funding, LLC* v. *First Eagle Corp.*, 196 Conn. App. 298, 300, 229 A.3d 1218 (§ 12-195h "permits a municipality to assign for consideration liens filed by the tax collector"), cert. denied, 335 Conn. 942, 237 A.3d 729 (2020). When viewed in relation to § 12-195h, and in the absence of any language whatsoever within § 12-144b referencing third-party holders of assigned tax liens, it cannot reasonably be inferred, solely from the language in § 12-144b requiring municipalities to "apply" tax payments that they receive or recover to "outstanding secured taxes," that the legislature intended to require municipalities to act, in effect, as loan servicers for third-party holders of municipal tax liens.

In this case, it is undisputed that, by the time the defendant made his first tax payment to the city, the city already had assigned the tax lien. At that point, the city was under no obligation to forward payments that it received from the defendant to the plaintiff or any subsequent assignee of the tax lien rather than applying the defendant's tax payments to taxes that the defendant owed to the city. Accordingly, we conclude that the court properly granted the plaintiff's motion for

summary judgment and denied the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The complaint also named as defendants the Water Pollution Control Authority of the city of Bridgeport and the Aquarion Water Company. Neither of these additional defendants is participating in the present appeal, and, thus, all references to the defendant in this opinion are to Marcelino Taipe.

[2] On December 15, 2021, the defendant filed a request for leave to amend his answer and special defense in order to add an additional special defense. That defense is not pertinent to this appeal.

[3] The court found that the amount of debt was $15,498.63 and that the fair market value of the property was $310,000.

[4] "Payment, such that a debt is no longer owed to a plaintiff, is a valid defense to liability in a foreclosure action." *JPMorgan Chase Bank, National Assn.* v. *Syed*, 197 Conn. App. 129, 143, 231 A.3d 286 (2020). "[W]hether payment was tendered is a question of fact appropriately decided by the trier of fact." *Homecomings Financial Network, Inc.* v. *Starbala*, 85 Conn. App. 284, 289, 857 A.2d 366 (2004); see also Practice Book § 10-50.

[5] Because we construe the defendant's sole claim on appeal to be one of payment, and not setoff, and because the defendant failed to brief the issue of setoff in his principal appellate brief, we deem any claim regarding setoff abandoned and decline to review it on appeal. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021); see also *Morrissey-Manter* v. *Saint Francis Hospital & Medical Center*, 166 Conn. App. 510, 527, 142 A.3d 363 ("appellate courts will treat as abandoned claims that are not briefed adequately"), cert. denied, 323 Conn. 924, 149 A.3d 982 (2016).

[6] General Statutes § 12-172 provides in relevant part: "The interest of each person in each item of real estate, which has been legally set in his assessment list, shall be subject to a lien for that part of his taxes laid upon the valuation of such interest, as found in such list when finally completed, as such part may be increased by interest, fees and charges, and a lien for any obligation to make a payment in lieu of any such taxes, as defined in section 12-171. Such lien, unless otherwise specially provided by law, shall exist from the first day of October or other assessment date of the municipality in the year previous to that in which such tax, or the first installment thereof, became due until two years after such tax or first installment thereof became due and, during its existence, shall take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it. . . ."

[7] Although we conclude that the language of § 12-144b is conclusive with respect to the defendant's claim, we note that the defendant's interpretation, if accepted, would require a municipality, upon receipt of a tax payment, (a) to determine whether it has assigned to a third party a tax lien that it once held with respect to a given property; (b) to identify and locate the current holder of any such lien; (c) to determine the amounts currently owed on any such lien; and (d) to transfer to the current holder of the lien all or a portion of the tax payments the municipality has received. Such an interpretation would run afoul of the tenet of statutory construction requiring us to interpret statutes in a manner that avoids bizarre or unworkable results. See *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 723, 104 A.3d 671 (2014) ("[i]t is axiomatic that [w]e must interpret the statute so that it does not lead to absurd or unworkable results" (internal quotation marks omitted)).

[8] General Statutes § 12-195h provides in relevant part: "(d) The assignee, or any subsequent assignee, shall provide written notice of an assignment, not later than sixty days after the date of such assignment, to the owner and any holder of a mortgage, on the real property that is the subject of the assignment, provided such owner or holder is of record as of the date of such assignment. Such notice shall include information sufficient to identify (1) the property that is subject to the lien and in which the holder has an interest, (2) the name and addresses of the assignee, and (3) the amount of unpaid taxes, interest and fees being assigned relative to the subject

property as of the date of the assignment.

"(e) Not less than sixty days prior to commencing an action to foreclose a lien under this section, the assignee shall provide a written notice, by first-class mail, to the holders of all first or second security interests on the property subject to the lien that were recorded before the date the assessment the lien sought to be enforced became delinquent. Such notice shall set forth: (1) The amount of unpaid debt owed to the assignee as of the date of the notice; (2) the amount of any attorney's fees and costs incurred by the assignee in the enforcement of the lien as of the date of the notice; (3) a statement of the assignee's intention to foreclose the lien if the amounts set forth pursuant to subdivisions (1) and (2) of this subsection are not paid to the assignee on or before sixty days after the date the notice is provided; (4) the assignee's contact information, including, but not limited to, the assignee's name, mailing address, telephone number and electronic mail address, if any; and (5) instructions concerning the acceptable means of making a payment on the amounts owed to the assignee as set forth pursuant to subdivisions (1) and (2) of this subsection. Any notice required under this subsection shall be effective upon the date such notice is provided. . . ."

———————————————